UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| In re<br><br>MINH VU HOANG and<br>THANH HOANG,<br><br>           Debtors. | Bankruptcy No. 05-21078-TJC<br>Bankruptcy No. 05-25738-TJC<br>(Chapter 7)<br><br>Jointly Administered Under<br>Bankruptcy No. 05-21078-TJC |
| GARY A. ROSEN, Chapter 7 Trustee for<br>    Minh Vu Hoang and Thanh Hoang<br>One Church Street, Suite 802<br>Rockville, MD 20850<br><br>           Plaintiff/Trustee,<br><br>        v.<br><br>GEMINI TITLE & ESCROW, LLC<br>110 N. Washington St., Suite 500<br>Rockville, Maryland 20850,<br><br>LAW OFFICES OF CRAIG A. PARKER,<br>    LLC<br>110 North Washington Street, Suite 500<br>Rockville, Maryland 20850,<br><br>CRAIG A. PARKER<br>110 North Washington Street, Suite 500<br>Rockville, Maryland 20850,<br><br>           Defendants. | Adv. Pro. No. _____ |

**Complaint for Accounting
Under 11 U.S.C. § 542(a)
and for Damages**

# Contents

Introduction................................................................................................................1

Jurisdiction and Venue ...........................................................................................3

Parties......................................................................................................................4

Facts Relevant to All Counts..................................................................................4

A.  Minh Vu Hoang's real-estate business and asset-concealment scheme........................4

B.  The defendants' involvement in the asset-concealment scheme...................................8

　　1.  Gemini Title ............................................................................................9

　　2.  Parker, Law Offices LLC, and the Yellow Account.........................................10

C.  The Hoangs' bankruptcy filings and Minh Vu Hoang's concealment of
　　the sham entities and of the assets in their names.........................................................14

D.  The defendants' knowledge of Minh Vu Hoang's bankruptcy ....................................15

E.  Gemini Title's participation in unauthorized postpetition sales..................................16

　　1.  The sham partnerships at issue: Segal, Cybele, Boswell, Cross
　　　　Creek, and Forest Heights.............................................................................16

　　2.  The properties involved in the postpetition sales...............................................18

　　3.  The postpetition purchases..............................................................................21

　　4.  The postpetition sale of the Properties and the dissipation of the
　　　　proceeds. ....................................................................................................22

F.  Parker's assistance in improper postpetition transactions...........................................25

　　1.  Rocky LLC and the Mubilt purchase.................................................................25

　　2.  Central Avenue.............................................................................................29

G. Losses to the estate resulting from the defendants' actions .........................................32

H.  The discovery of facts giving rise to the claims against the defendants.....................33

Count 1—Accounting under 11 U.S.C. § 542(a) (Gemini Title).......................................33

Count 2—Accounting under 11 U.S.C. § 542(a) (Parker and Law Offices
　　LLC).............................................................................................................33

Count 3—Conversion (Gemini Title) ...............................................................................34

Count 4—Conversion (Parker and Law Offices LLC) ......................................................34

Count 5—Aiding and abetting  breach of fiduciary duty ..................................................34

Count 6—Co-conspirator liability for breaches of fiduciary duty by Minh
    Vu Hoang ..................................................................................................35

Count 7—Aiding and abetting  fraudulent conveyances ....................................36

Count 8—Co-conspirator's liability  for fraudulent conveyances ....................37

Count 9—Aiding and abetting  conversion ........................................................39

Count 10—Co-conspirator's liability  for conversion .......................................40

Count 11—Contempt of Court (Gemini Title)...................................................41

Count 12—Contempt of Court (Parker and Law Offices LLC) ........................42

## Introduction

1. Debtor Minh Vu Hoang engaged in a massive asset-concealment scheme, and plaintiff Rosen—the Chapter 7 trustee in her bankruptcy—has the daunting task of untangling Minh Vu Hoang's byzantine dealings, locating her assets, and recovering them (or their value) for the estate.

2. In carrying out her scheme, Minh Vu Hoang relied on a number of enablers. Among those enablers were the defendants in this action: Gemini Title and Escrow, LLC; Craig Parker; and the Law Offices of Craig A. Parker, LLC.

3. Those defendants provided Minh Vu Hoang with crucial assistance. Gemini Title closed many of Minh Vu Hoang's purchases and sales. Although the properties involved in those transactions were typically titled in the name of what were ostensibly general partnerships, the real owner was Minh Vu Hoang. The partnerships were sham entities that Minh Vu Hoang ginned up in order to create the misleading appearance that they did not belong to her. Gemini Title knew or should have known what Minh Vu Hoang was doing.

4. Minh Vu Hoang's asset-concealment scheme continued even after she went into bankruptcy. Over a period of roughly three months, and without the knowledge or approval of the Court, she sold 10 properties that were titled in the name of her sham entities. Gemini Title handled the closings on these sales, and it did so with knowledge that Minh Vu Hoang had filed for bankruptcy. Gemini Title received the proceeds of those sales, which constituted property of the bankruptcy estate. And instead of turning them over to the estate, Parker (and his LLC) distributed them to various third parties on Minh Vu Hoang's instructions. Those funds are now lost to the estate.

5.   Like Gemini Title, Parker and his LLC provided services that enabled Minh Vu Hoang to conceal her assets. For several years they operated in effect as Minh Vu Hoang's bankers by devoting a special IOLTA account exclusively to her benefit. That account provided a vehicle for Minh Vu Hoang to commingle funds generated by the sale of property in the name of her sham entities. It also enabled her to engage in transactions without leaving a paper trail that could be traced back to her.

6.   Like Gemini Title, Parker's LLC received the proceeds of unauthorized post-petition sales of Minh Vu Hoang's properties and disbursed them to third parties on her instructions. Parker also assisted Minh Vu Hoang in concealing assets after she filed for bankruptcy, by advising her about how to structure fraudulent transactions in a way that would accomplish her goals.

7.   The defendants are liable to the estate under a variety of legal theories:

a.   Under 11 U.S.C. § 542(a), they must account for the value of the property of the estate that they dissipated.

b.   They are liable for conversion.

c.   They are liable for aiding and abetting conversion by Minh Vu Hoang.

d.   They are liable for acts of conversion committed by Minh Vu Hoang pursuant to, and within the scope of, a conspiracy between Minh Vu Hoang and the defendants.

e.   They are liable for aiding and abetting Minh Vu Hoang's breaches of her fiduciary duty as debtor in possession.

f.   They are liable for Minh Vu Hoang's breaches of her fiduciary duty as debtor in possession pursuant to, and within the scope of, a conspiracy between Minh Vu Hoang and the defendants.

g.   They are liable for aiding and abetting fraudulent conveyances by Minh Vu Hoang.

h.   They are liable for fraudulent conveyances made or caused to be made by Minh Vu Hoang pursuant to a conspiracy between Minh Vu Hoang and the defendants.

i.   They are liable for contempt of court for having interfered with property that was in the Court's constructive possession.

j.   They are liable for contempt of court for Minh Vu Hoang's interference with property that was in the Court's constructive possession, pursuant to, and within the scope of, a conspiracy between Minh Vu Hoang and the defendants.

**Jurisdiction and Venue**

8.   The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) & 1334(b) and D. Ct. Local Rule 402 because (a) the action arises under the Bankruptcy Code and (b) the action arises in and/or relates to a case under the Bankruptcy Code. This is a core proceeding.

9.   Venue in this district is proper under 28 U.S.C. § 1409(a) because the bankruptcy case to which this action relates is pending in this district.

**Parties**

10. Plaintiff Gary A. Rosen is the Chapter 7 Trustee for Minh Vu Hoang (debtor in *In re Minh Vu Hoang*, No. 05-21078-TJC) and for Thanh Hoang (debtor in *In re Thanh Hoang*, No. 05-25738-TJC).

11. Defendant Gemini Title & Escrow, LLC ("Gemini Title") is a Maryland limited liability company with its principal place of business in Montgomery County.

12. Defendant Law Offices of Craig A. Parker, LLC ("Law Offices LLC") is a Maryland limited liability company with its principal place of business in Montgomery County.

13. Defendant Craig A. Parker ("Parker") is a citizen of Maryland who lives in Montgomery County, Maryland. He is a member of the Maryland bar. Upon information and belief, he has at all relevant times been the managing member of Gemini Title and Law Offices LLC.

**Facts Relevant to All Counts**

**A.   Minh Vu Hoang's real-estate business and asset-concealment scheme**

14.  Beginning at least as early as 1998, and continuing into at least 2005, Minh Vu Hoang was in the business of buying distressed real estate at foreclosure and selling it at a profit.

15. Beginning at least as early as 1998, Minh Vu Hoang undertook a complex and wide-ranging scheme to conceal her assets from creditors.

16. This scheme was motivated at least in part by the fact that Minh Vu Hoang was continually being sued and that she wanted to impede her creditors from being able to execute on any judgments.

4

17. In addition, Minh Vu Hoang did not file any federal tax returns or pay any federal taxes for (at least) tax years 2000–2005.

18. The methods that Minh Vu Hoang used to conceal her assets included those described in ¶¶ 19–35, below.

19. When Minh Vu Hoang purchased real property, she often caused the property to be titled in the name of a sham entity or of another nominee.

20. Minh Vu Hoang used more than 200 such sham entities.

21. Many of the sham entities were supposedly general partnerships. These purported partnerships were, in economic substance, merely names under which Minh Vu Hoang did business as a sole proprietor. They did not constitute associations of two or more persons carrying on a business as co-owners. In particular, nobody other than Minh Vu Hoang was an owner of the business carried on by the sham partnerships. Therefore, none of the sham partnerships fell within the statutory definition of a general partnership.

22. As part of her asset-concealment scheme, Minh Vu Hoang created sham partnership agreements or caused such sham agreements to be created. These purported agreements were not intended to have any legal effect, but were manufactured for the purpose of creating a false and misleading paper record ostensibly showing that the purported partnerships in whose name Minh Vu Hoang's properties were titled really existed.

23. For many of the sham partnerships, there weree multiple purported partner-ship agreements. And in many such instances, there are fundamental inconsistencies among the various iterations of the purported agreement, with one iteration listing different partners (and/or different percentage interests) than another. In addition, some

purported partnership agreements list only a single partner, who is identified as owning 100% of the interest in the alleged partnership.

24. Funds ostensibly belonging to a particular sham entity (for example, proceeds from the sale of property titled in the name of that sham entity) were routinely commingled with funds ostensibly belonging to other sham entities, without any records being maintained to keep track of the amounts ostensibly attributable to each sham entity.

25. Funds ostensibly belonging to a particular sham entity (for example, proceeds from the sale of property titled in the name of that sham entity) were routinely used for the benefit of other sham entities. Such uses included payment of the purchase price of property being acquired in the name of other sham entities and payment of costs associated with property titled in the name of other sham entities.

26. Funds ostensibly belonging to a particular sham entity (for example, proceeds from the sale of property titled in the name of that sham partnership) were routinely paid or distributed to or for the benefit of Minh Vu Hoang. The funds paid or distributed in that way were often used for payment of the purchase price of property being acquired in the name of other sham entities. Such funds were also used to pay legal fees incurred by Minh Vu Hoang, including legal fees owed to Parker and Law Offices LLC.

27. Funds ostensibly belonging to Minh Vu Hoang or Thanh Hoang were routinely commingled with funds ostensibly belonging to one or more of the sham entities, without any records being maintained to keep track of what amounts were attributable to who.

28. Upon information and belief, the sham entities had no financial records.

29. Upon information and belief, most of the sham entities had no Taxpayer Identification Number.

30. Upon information and belief, Minh Vu Hoang did obtain Taxpayer Identification Numbers for some of her sham entities. She then used some or all of those numbers for multiple sham entities.

31. Upon information and belief, no tax returns or Schedule K1s were prepared or filed for the sham entities.

32. As discussed further below, Minh Vu Hoang did not list any of the sham entities on her schedules or Statement of Financial Affairs.

33. The sham entities are and always have been instrumentalities and alter egos of Minh Vu Hoang, such that they have never had any existence separate from Minh Vu Hoang.

34. In the alternative, if the entities had an existence separate from Minh Vu Hoang—

    a. They acted with respect to the transactions at issue here as nominees and/or agents for Minh Vu Hoang. As such, they held bare legal title at most, with Minh Vu Hoang being owner of all equitable interest in the properties that were ostensibly owned by the sham entities.

    b. They were used by Minh Vu Hoang to commit fraud by concealing assets from creditors and from this Court. Therefore, it is necessary to disregard that (hypothesized) separate existence in order to prevent fraud.

    c.   It is necessary to disregard that (hypothesized) separate existence in order to protect plaintiff Rosen's paramount equity as Chapter 7 Trustee of Minh Vu Hoang's bankruptcy estate.

35. Minh Vu Hoang routinely carried out transactions in such a way as to minimize the paper trail she left and to make the transactions hard to untangle.

36. For example, in many cases, checks or money orders payable to one or another of the sham entities, or to Minh Vu Hoang or Thanh Hoang, were not deposited in a bank account at all. Instead, the checks were signed over as deposits on the purchase of properties being bought in the name of one of the sham entities. In many cases, these checks represented sales proceeds of property that had been titled in the name of one of the sham entities.

37. Further, in many cases Minh Vu Hoang caused checks for proceeds of her sham entities' sales to be made out to nominees such as family members. Such nominees were not intended to have any real interest in the funds, and Minh Vu Hoang dealt with the checks as if they belonged to her.

38. Also, as described below, Hoang used an attorney trust account maintained by Parker and Law Offices LLC as a private bank account. this enabled her to make payments and distribute funds without creating any records linking her to the payments and distributions (other than Parker and Law Offices LLC's internal records).

**B.   The defendants' involvement in the asset-concealment scheme**

39. As described in more detail in ¶¶ 41–64, below, Gemini Title, Parker, and Law Offices LLC provided Minh Vu Hoang with substantial assistance in concealing her assets and therefore hindering, delaying, and defrauding her creditors.

40. As described in more detail in ¶¶ 41–64, below, when Gemini Title, Parker, and Law Offices LLC provided the assistance described in the preceding paragraph, they knew or should have known that Minh Vu Hoang was acting to conceal her assets and therefore to hinder, delay, and defraud her creditors. They also knew or should have known that their actions were providing her substantial assistance in doing so.

### 1.   Gemini Title

41. Minh Vu Hoang used Gemini Title as the settlement company for hundreds of the properties she bought and sold in the name of her sham entities.

42. As a result of acting as the settlement agent for those purchases and sales, Gemini Title was at all relevant times aware that when Minh Vu Hoang bought property in the name of a sham partnership, the funds for the purchase often came from sources other than the sham partnership that was the ostensible purchaser.

43. Gemini Title was also aware that when Minh Vu Hoang sold property that was titled in the name of a sham partnership, the sales proceeds were often paid to, or used for the benefit of, persons or entities other than the ostensible seller.

44. When a title company closes a transaction in which the seller is a partnership, it is customary for the title company to obtain a copy of the seller's partnership agreement, in order to verify that the transaction is authorized and that the person signing for the partnership is authorized to do so.

45. Despite that general practice, Gemini Title often closed transactions in which the seller was one of Minh Vu Hoang's sham partnerships without obtaining a copy of the partnership agreement.

46. In 2004, Gemini Title undertook to obtain for its files copies of partnership agreements for the sham entities it had previously done closings for. It did this because of criticism by auditors for the title insurance companies with which it was an agent. In 2004, a Gemini Title employee sent Minh Vu Hoang an email stating as follows:

> Minh—
>
> Our title insurance auditor has been on us because of your multitude of partnerships. We need to get copies of your partnership agreements for each of your partnerships so we can keep them in our files and stay straight with our auditors. Off the top of my head, I know we've done settlements for the following partnerships:
>
> [List of 15 sham partnerships omitted]
>
> These are just the ones we've done (as far as I can tell) since August of last year. I really need a copy of an agreement on each one of these so we don't get in trouble. Thanks.

47. Title companies are required by law to file Form 10099s for all real estate transactions for which they are responsible for the closing.

48. Despite that requirement, when Gemini Title closed transactions in which one of Minh Vu Hoang's sham entities was the seller, it did not prepare or file a Form 1099 with respect to the sales proceeds disbursed to the ostensible seller.

**2.    *Parker, Law Offices LLC, and the Yellow Account***

49. Upon information and belief, Parker was at all relevant times aware of Minh Vu Hoang's practice of acquiring real estate in the name of sham entities as a means of concealing her assets and hindering or impeding her creditors.

50. The knowledge described in the preceding paragraph was material to the business of Law Offices LLC and to Parker's duties with respect to Law Offices LLC.

51. The knowledge described in ¶ 49, above is imputed to Law Offices LLC.

10

52. In addition, and as described in more detail in ¶¶ 53–64, below, Parker and Law Offices LLC operated what was in effect a private bank for Minh Vu Hoang. They opened a special trust account that was, until about two years after she went into bankruptcy, devoted exclusively to her benefit. The funds deposited into the account came primarily if not exclusively from the sales proceeds of properties that Minh Vu Hoang had acquired in the name of one of her sham entities or of some other nominee. Those funds were then used for the benefit of Minh Vu Hoang. They were used, among other things, to fund Minh Vu Hoang's purchase of additional properties in the names of other sham entities, to pay costs associated with Minh Vu Hoang's properties, and to pay Minh Vu Hoang's legal bills. Money from the account was also paid to Minh Vu Hoang's relatives and friends. By opening this account and using it for Minh Vu Hoang's benefit, Parker and Law Offices LLC helped Minh Vu Hoang keep millions of dollars out of her own name.

53. The account was opened at SunTrust Bank on or about June 17, 2003, by Parker, who was acting on behalf of Law Offices LLC. The account title was "Law Offices of Craig A. Parker LLC Maryland Legal Services IOLTA Escrow Account II." The account number was xxxxxxxxx8857. Parker had signature authority on the account, and he signed many of the checks that were ultimately drawn on the account.

54. Parker and Hoang referred to this account as "the Yellow Account." They used that name because the checks for the account were yellow.

55. To record the transactions in the Yellow Account, Parker and Law Offices LLC used Gemini Title's "Title Express Escrow System" software. As explained below, the Yellow Account was identified within Title Express by the designation "HOANG":

11

a.  Because the Title Express software is intended for use by title companies, it is designed so that each sale that is closed by title company is assigned its own "order number," which is used to enable individual receipts and disbursements to be associated with the appropriate sale. When Gemini Title used the Title Express software in the ordinary course of its business, it used order numbers such as "05-1316FCL" and "05-1368FCL," as shown by the following images taken from the Itemized Disbursement Statements for two transactions:



b.  However, when Parker and Law Offices LLC used the Title Express software for the Yellow Account, they lumped all receipts and disbursements during a single month together under a single order number, which took the form "HOANGmmyy." Thus, the order numbers for January and February 2004 were HOANG0104 and HOANG0204, as shown by the following images taken from the Itemized Disbursement Statements for those months:



| Itemized Disbursement Statement | P |
| --- | --- |
| No: ████████8857 | Bank: Law Offices of Craig A. Parker, LLC<br>Order #: HOANG0204 |
| Order #: HOANG0204 | |

56. The funds deposited into the Yellow Account were primarily if not exclusively proceeds from the sale of properties that Minh Vu Hoang had acquired in the name of her sham entities or other nominees. In some cases, the sales proceeds were disbursed in the form of checks payable to someone other than the ostensible seller (e.g., to Minh Vu Hoang or Thanh Hoang), and those checks were deposited in the Yellow Account.

57. The disbursements from the Yellow Account fall into several categories, among which were the following:

    a.  Payments for Minh Vu Hoang's purchase of additional properties in the names of sham entities.

    b.  Checks payable to Minh Vu Hoang or to Thanh Hoang, at least some of which were used in the purchase of additional properties in the name of sham entities, as described in ¶ 36, above.

    c.  Payments in satisfaction of judgments against Minh Vu Hoang.

    d.  Payments of legal fees that Minh Vu Hoang owed to Parker and Law Offices LLC.

    e.  Payments or transfers to accounts in the name of other Minh Vu Hoang sham entities (e.g., Osher, Inc.).

    f.  Payments or transfers to Minh Vu Hoang's relatives and friends.

58. The Title Express software provided the capability to track receipts and disbursements based on the entity or overall transaction to which they are allocable, and Gemini Title used that capability in connection with the transactions that it closed. But

the same thing was not done with respect to the Yellow Account. No attempt was made to keep track of the amounts attributable to each of the Minh Vu Hoang sham entities that was the ostensible source of the funds deposited in the account. Nor was any attempt made to attribute individual disbursements to particular Minh Vu Hoang sham entities.

59. During most of the time the Yellow Account was being used, the amount of money going into and out of the account each month ranged from several hundred thousand dollars to more than a million dollars.

60. Parker was aware of how the Yellow Account was used and of the nature of the deposits to and disbursements from the Yellow Account. In fact, Parker was personally involved in handling most of those deposits and disbursements.

61. In his actions with respect to the Yellow Account, Parker was acting as an agent of Law Offices LLC, within the scope of his authority.

62. Parker's knowledge with respect to the Yellow Account was material to the business of Law Offices LLC and to Parker's duties with respect to Law Offices LLC.

63. Parker's knowledge with respect to the Yellow Account was material to the business of Gemini Title and to Parker's duties with respect to Gemini Title.

64. Parker's knowledge with respect to the Yellow Account is imputed to Law Offices LLC and to Gemini Title.

**C.   The Hoangs' bankruptcy filings and Minh Vu Hoang's
concealment of the sham entities and of the assets in their names**

65. On May 10, 2005, Minh Vu Hoang filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court as Case No. 05-21078.

66. Upon the filing of Minh Vu Hoang's bankruptcy petition, the properties listed in ¶ 86, above, became property of her bankruptcy estate.

67. Minh Vu Hoang filed her schedules and Statement of Financial Affairs on or about May 27, 2005. Although Minh Vu Hoang declared under penalty of perjury that the information contained in the schedules and Statement of Financial Affairs was true and correct, the schedules and Statement of Financial Affairs failed to disclose any ownership interest (a) in any of the properties listed in ¶ 86, (b)in any of the Sham Partnerships listed in ¶ 79, (c) in any of the additional sham entities listed in ¶ 88.f, above, or (d) in any of the other sham entities that Minh Vu Hoang used in buying and selling real estate.

68. On August 31, 2005, plaintiff Rosen was appointed as Chapter 11 Trustee in Minh Vu Hoang's bankruptcy. Subsequently, on October 28, 2005, the case was converted to Chapter 7 and Rosen was appointed as Chapter 7 Trustee.

69. On July 12, 2005, Thanh Hoang filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court as Case No. 05-25738. Subsequently, on September 22, 2005, the case was converted to Chapter 7. The next day, Rosen was appointed as Chapter 7 Trustee.

70. By orders entered September 28, 2005, the two bankruptcy cases were ordered to be administered jointly under Case No. 05-21078.

**D.   The defendants' knowledge of Minh Vu Hoang's bankruptcy**

71. Defendant Parker learned of Minh Vu Hoang's bankruptcy on or about May 10, 2005, when Minh Vu Hoang sent him an email stating that she had filed for bankruptcy under Chapter 11.

72. When Parker learned about Minh Vu Hoang's bankruptcy, and at all relevant times thereafter, he was a member and/or employee and/or agent of Gemini Title.

73. When Parker learned about Minh Vu Hoang's bankruptcy, and at all relevant times thereafter, he was a member and/or employee and/or agent of Law Offices LLC.

74. Parker's knowledge of Minh Vu Hoang's bankruptcy was material to the business of Gemini Title and to his duties with respect to Gemini Title.

75. Parker's knowledge of Minh Vu Hoang's bankruptcy was material to the business of Law Offices LLC and to his duties with respect to Law Offices LLC.

76. As a result of the facts set out in ¶¶ 71–76, above, Parker's knowledge of Minh Vu Hoang's bankruptcy is imputed to Gemini Title.

77. As a result of the facts set out in ¶¶ 71–76, above, Parker's knowledge of Minh Vu Hoang's bankruptcy is imputed to Law Offices LLC.

**E.  Gemini Title's participation in unauthorized postpetition sales**

78. As set out below, Gemini Title closed ten unauthorized postpetition sales of properties titled in the name of Minh Vu Hoang's sham entities. It then disbursed the sales proceeds at Minh Vu Hoang's instruction, thereby depriving the bankruptcy estate of those funds.

***1.  The sham partnerships at issue: Segal, Cybele, Boswell, Cross Creek, and Forest Heights***

79. Among Minh Vu Hoang's sham entities are five sham partnerships: "Segal General Partnership" ("Segal"), "Cybele General Partnership" ("Cybele"), "Boswell General Partnership" ("Boswell"), "Cross Creek General Partnership" ("Cross Creek") and "Forest Heights General Partnership" ("Forest Heights"). These sham partnerships are referred to here as "the Sham Partnerships."

80. With respect to Segal, Cybele, and Boswell, there exist multiple purported partnership agreements, including at least those listed in Table 1 on the next page.

**Table 1—Purported partnership agreements**

| Partnership | Date | Partners & Interests | | Comments |
|---|---|---|---|---|
| **Segal** | 7/10/1999 } 3/4/2002 } 6/15/2004 } | Minh Thanh | 50% 50% | |
| | 1/2/2003 | Minh Van Vu P. Hoang | 59% 40% 1% | |
| | 4/20/2003 | Thanh | 100% | |
| | 8/18/2004 | Hao Vu Van Vu Minh | 45% } 45% } 10% } | Only for 3805 33rd St., Mt. Ranier |
| **Cybele** | 3/1/2003 } 2/2/2004 } | Thanh | 100% | |
| | 1/1/2004 | Minh Thanh | 50% 50% | |
| | Various | Hao Vu Van Vu Minh* | 45% } 45% } 10% } | Only for specified properties *As "agent," not partner |
| **Boswell** | 2/2/2004 | Minh Thanh | 50% 50% | |
| | 9/10/2004 } 10/7/2004 } | Thanh Van Vu | 10% 90% | |
| | 9/15/2004 | Hao Vu Van Vu Minh* | 45% 45% 10% | *As "agent," not partner |
| | 10/7/2004 | Thanh Van Vu | 10% 90% | |

81. These agreements highlight the sham nature of these purported partnerships. For each of these sham partnerships, there are fundamental inconsistencies among the various iterations of the purported agreement, with one iteration listing different partners (and/or different percentage) interests than another. In addition, some iterations list only a single partner, who is identified as owning a 100% interest in the partnership.

82. The only purported partnership agreements that plaintiff Rosen is aware of for Cross Creek and Forest Heights are agreements indicating that each of those sham

17

partnerships has a single partner (Uy Hoang, who is Minh Vu Hoang's son) who supposedly owned a 100% interest in the purported partnership.

83. Upon information and belief, Cross Creek and Forest Heights had no Taxpayer Identification Number.

84. Upon information and belief, Minh Vu Hoang used a Taxpayer Identification Number for Segal that she also used for at least 17 other sham entities.

85. Upon information and belief, Minh Vu Hoang used a Taxpayer Identification Number for Cybele that she also used for at least 7 other sham entities.

## 2. *The properties involved in the postpetition sales*

86. Among the properties purchased in the name of the Sham Partnerships were those listed in Table 2, below.

**Table 2—Purchases**

| Named title-holder | Address | Purchase date | Price |
|---|---|---|---|
| Segal | 4601 Riverdale Rd. Riverdale, MD | April 14, 2004 | $105,000.00 |
| Segal | 6110 Skyline Terrace Suitland, MD | July 2, 2004 | $121,000.00 |
| Segal | 705 Quail Drive Glen Burnie, MD | Nov. 1, 2004 | $197,000.00 |
| Segal | 12605 Laurie Drive Silver Spring, MD | Dec. 17, 2004 | $330,000.00 |
| Cybele | 14517 Marlborough Cir. Upper Marlboro, MD | July 26, 2005 | $139,000.00 |
| Cybele | 7603 Den Meade Ave. Washington, MD | March 18, 2005 | $241,000.00 |
| Cybele | 5900 Rosedale Drive Hyattsville, MD | May 13, 2005 | $240,000.00 |
| Boswell | 412 71st Avenue Capitol Heights, MD | Jan. 16, 2005 | $121,000.00 |
| Cross Creek | 4316 Medallion Drive Silver Spring, MD | May 27, 2005 | $563,000.00 |
| Forest Heights | 5612 Delaware Drive Oxon Hill, MD | May 2, 2005 | $176,000.00 |

87. As indicated in Table 2, three of the purchases took place after Minh Vu Hoang filed for bankruptcy: Cybele's purchase of 5900 Rosedale Drive on May 13, 2005; Cross Creek's purchase of 4316 Medallion Drive on May 27, 2005; and Cybele's purchase of 14517 Marlborough Cir. on July 27, 2005.

88. In each of the purchases identified in ¶ 86, some or all of the funds paid for the purchase came from sources other than the Sham Partnership in whose name the property was being acquired. For example—

   a.  Funds ostensibly belonging to Segal were used for the purchase of properties in the name of Cybele and Cross Creek.

   b.  Funds ostensibly belonging to Cybele were used for the purchase of property in the name of Forest Heights.

   c.  Funds ostensibly belonging to Minh Vu Hoang (specifically, checks payable to Minh Vu Hoang, some of which were drawn on the Yellow Account) were used for the purchase of properties in the name of Segal, Cybele, Boswell, and Cross Creek.

   d.  Funds ostensibly belonging to Thanh Hoang (specifically, checks payable to Thanh Hoang, some of which were drawn on the Yellow Account) were used for the purchase of properties in the name of Segal.

   e.  Funds from the Yellow Account (in addition to those referred to above) were used for the purchase of properties in the names of Segal and Cybele.

   f.  Funds ostensibly belonging to other sham partnerships were used for the purchase of properties in the name of Segal, Cybele, Boswell, Cross Creek, and Forest Heights. These other sham partnerships included

"Lamberton General Partnership," "Ray General Partnership," "Adrian General Partnership," "Hutchinson General Partnership," "Pool General Partnership," "First Call General Partnership, Wada General Partnership," "Van Vu General Partnership," and "MV General Partnership

g. Funds entrusted by third parties to Minh Vu Hoang for alleged investment were used for the purchase of properties in the name of Segal and Boswell.

89. Of the purchases listed in ¶ 86, in only three (Segal's purchase of 12605 Laurie Drive, 6110 Skyline Terrace, and 705 Quail Drive) did even part of the purchase funds ostensibly belong to the Sham Partnership in whose name the purchase was being carried out.

90. However, in each of those three purchases, significant portions of those purchase funds can be traced back to the Yellow Account, as described below:

a. *12605 Laurie Drive*: $257,249.16 of the purchase price took the form of a check payable to Segal. That check represented proceeds of the sale by Segal of 13103 Chalfont Ave., Fort Washington, MD. That property had been purchased using $160,291.23 from the Yellow Account.

b. *6110 Skyline Terrace*: $110,350.34 of the purchase price took the form of a check payable to Segal. That check represented proceeds of the sale by Segal of 5604 Arapahoe Drive, Oxon Hill, MD. That property had been purchased using $72,865.05 from the Yellow Account.

c. *705 Quail Drive*: $249,726.93 of the purchase price took the form of a check payable to Segal. That check represented proceeds of the sale by

Segal of 3406 Harmon Court, Upper Marlboro, MD. That property had

been purchased using $196,268.47 from the Yellow Account.

91. Shortly before the closing on the purchase of the Rosedale Drive property in

the name of Cybele, the seller paid $231,507.32 to Minh Vu Hoang, representing a refund

of an overpayment of the purchase price. That amount was more than 14 times the

amount of money ostensibly belonging to Minh Vu Hoang that was initially paid in

connection with the purchase. The excess represented funds from the sale of properties by

one or more of Minh Vu Hoang's sham partnerships (namely, Cybele, Wada General

Partnership, and Van Vu General Partnership), which were paid toward the purchase of

the Rosedale Drive property.

### 3.   *The postpetition purchases*

92. Three of the properties at issue here were purchased by Minh after she filed

for bankruptcy: 5900 Rosedale Drive (purchased in the name of Cybele on May 13,

2005), 4316 Medallion Drive (purchased in the name of Cross Creek on May 27, 2005),

and 14517 Marlborough Circle (purchased in the name of Cybele on July 26, 2009).

93. A portion of the funds used to buy 5900 Rosedale Drive and 14517 Marl-

borough Circle came from checks drawn on the Yellow Account that were payable to

Minh Vu Hoang.

94. The closing on the purchase of 4316 Medallion Drive was handled by Gemini

Title.

95. As is explained in ¶¶ 71–76, above, when Gemini Title conducted the closing

on that purchase, it knew that Minh Vu Hoang had filed for bankruptcy.

96. When Title Gemini conducted the closing on the purchase of 4316 Medallion

Drive, it knew or should have known (a) that Cybele was not a real partnership and that

Minh Vu Hoang was the real purchaser, (b) that Cybele was acting as Minh Vu Hoang's nominee and that Minh Vu Hoang was therefore acquiring an equitable interest in the property, and/or (c) that Cybele was Minh Vu Hoang's alter ego.

97. Once the closing on the purchase of 4316 Medallion Drive was completed, and title to the property was transferred, Gemini Title knew or should have known that the property constituted property of Minh Vu Hoang's bankruptcy estate.

**4.  *The postpetition sale of the Properties and the dissipation of the proceeds.***

98. Beginning on May 31, 2005—three weeks after she filed for bankruptcy—Minh Vu Hoang caused each of the properties listed in ¶ 86, above, to be sold.

99. The details of those sales were as shown in Table 3:

**Table 3—Sales**

| Date | Seller | Address | Sales price | Net proceeds |
|------|--------|---------|-------------|--------------|
| 5/31/05 | Cybele | 7603 Den Meade | $305,000 | $ 273,447.87 |
| 6/3/05 | Segal | 6110 Skyline Terrace | 270,000 | 258,446.51 |
| 6/8/05 | Cybele | 5900 Rosedale Avenue | 335,000 | 319,285.96 |
| 6/20/05 | Segal | 4601 Riverdale Avenue | 328,000 | 315,401.40 |
| 6/23/05 | Segal | 705 Quail Drive | 285,000 | 271,279.62 |
| 7/7/05 | Boswell | 412 71st Avenue | 260,000 | 242,238.25 |
| 7/8/05 | Cross Creek | 4316 Medallion Drive | 281,000 | 684,415.75 |
| 7/28/05 | Forest Heights | 5612 Delaware Drive | 281,000 | 271,312.47 |
| 7/29/05 | Cybele | 14517 Marlborough Circle | 190,000 | 184,463.79 |
| 8/26/05 | Segal | 12605 Laurie Drive | 515,000 | 497,005.52 |
| | | | **Total** | $3,317,297.14 |

100. Each of the foregoing sales was made without this Court's authorization having been sought or obtained.

101. The closing for each of the foregoing sales was handled by Gemini Title.

102. In its capacity as the closing agent on each of the foregoing sales, Gemini received the funds paid by or on behalf of the buyer.

103.  Gemini Title deposited those funds in an account at SunTrust Bank (no. xxxxxxxxx5001), in the name of Gemini Title ("the Gemini Escrow Account") and held them in that account until they were disbursed, as described below.

104.  During the period from the first deposit of proceeds from the sales listed in ¶ 99, above, until the last of those funds was disbursed from the account, the collected balance in the Gemini Escrow Account was always higher than the amount of proceeds in the account.

105.  With respect to each of the sales listed in ¶ 99, above, the funds received by Gemini Title represented the proceeds of the sale of property of Minh Vu Hoang's bankruptcy estate.

106.  With respect to each of the sales listed in ¶ 99, above, the funds received by Gemini Title became, upon the transfer of title to the property being sold, property of Minh Vu Hoang's bankruptcy estate.

107.  Once the sales proceeds received by Gemini Title became property of Minh Vu Hoang's bankruptcy estate, Gemini Title became obligated under 11 U.S.C. § 542(a) to turn those proceeds over to the bankruptcy estate.

108.  Gemini Title failed to turn over the sales proceeds to the bankruptcy estate.

109.  Instead, Gemini title distributed the sales proceeds pursuant to the instructions of Minh Vu Hoang.

110.  The sales proceeds shown on the settlement sheets as being due to the sellers were, in whole or in substantial part, distributed to or for the benefit of entities (or sham entities) other than the ostensible seller.

111. The bulk of the proceeds were distributed as shown in Table 4, below (names marked with an asterisk refer to Minh Vu Hoang sham entities).

**Table 4—Distribution of proceeds (small distributions excluded)**

| Partnership | Recipient/beneficiary | Amount |
|---|---|---|
| Segal | *Junon GP (via payoff of deed of trust) | $108,613.96 |
| Segal | *Junon GP (via payoff of deed of trust) | 18,355.99 |
| Segal | *Minbilt Co. | 87,787.44 |
| Segal | *Minbilt Co. | 66,000.00 |
| Segal | *Parkchase GP (via check payable to Thanh Hoang, which was used as part payment for purchase of property by Parkchase) | 100,00.000 |
| Segal | *Parkchase GP (via check payable to Thanh Hoang, which was used as part payment for purchase of property by Parkchase) | 71,279.62 |
| Segal | *Parkchase GP | 100,000.00 |
| Segal | *Rocky, LLC | 432,442.36 |
| Segal | Sedy Systems LLC (alleged investor) | 249,043.00 |
| Segal | Van Thi Vu (Minh Vu Hoang's sister) | 9,703.51 |
| Cybele | *Cybele GP | 170,201.90 |
| Cybele | *Minbilt Co. | 146,977.06 |
| Cybele | *Minbilt Co. | 273,447.87 |
| Cybele | *Rocky, LLC | 184,463.79 |
| Boswell | Abbas Moazami (alleged investor) | 117,369.12 |
| Boswell | Abbas Moazami (alleged investor) | 13,725.15 |
| Boswell | Abbas Moazami (alleged investor) | 287.23 |
| Boswell | Edith Purdie (alleged investor) | 111,143.98 |
| Cross Creek | Darrell Kelly (confederate of Minh Vu Hoang) (via funds applied toward purchase of property) | 247,225.43 |
| Cross Creek | *Rocky, LLC | 280,653.23 |
| Forest Hts. | *Rocky, LLC | 268,852.47 |

112. All of the distributions listed in Table 4 (as well as others not listed in that table) were made with funds traceable to the proceeds of the sales listed in ¶ 99, above.

113. In each sale identified in ¶ 99, above, the property was sold to a bona fide purchaser for value. As a result, plaintiff Rosen was not entitled to avoid the sale and recover the property for the benefit of the estate.

114. Rosen has attempted to trace the sales proceeds so that he could try to recover them for the benefit of the estate, but has had only very limited success in recovering funds for the estate.

115. On May 31, 2005. a payment to Law Offices LLC in the amount of $13,000 was charged as a settlement cost in connection with one of the Cybele sales. Upon information and belief, that payment was in satisfaction of legal fees owed by Minh Vu Hoang.

116. The $13,000 paid to Law Offices LLC constituted property of Minh Vu Hoang's bankruptcy estate.

117. Law Offices LLC was obligated under 11 U.S.C. § 542(a) to turn those funds over to the bankruptcy estate, and Parker was obligated to cause Law Offices LLC to do so.

118. Parker did not turn the funds over to the bankruptcy estate.

119. Parker did not cause Law Offices LLC to turn the funds over to the bankruptcy estate.

**F.   Parker's assistance in improper postpetition transactions.**

120. Like Gemini, Parker and Law Offices LLC assisted Minh Vu Hoang in carrying out improper postpetition transactions.

*1.   Rocky LLC and the Mubilt purchase*

121. As noted above, some of the proceeds from the sales by Segal, Cybele, Cross Creek, and Forest Heights were distributed to an entity known as Rocky LLC ("Rocky"), which was one of Minh Vu Hoang's sham entities.

122. Rocky was purportedly formed on or about July 14, 2005—two months after Minh Vu Hoang filed for bankruptcy.

123. Rocky was formed in order to facilitate the concealment of assets belonging to Minh Vu Hoang from this Court.

124. Rocky was never intended to have any real economic existence as a business entity. Rather, it was intended to serve as Minh Vu Hoang's alter ego and/or nominee.

125. On July 14, 2007, what purported to be Rocky's articles of organization were filed with the Maryland Department of Assessment and Taxation as liber B00829, folio 1453 ("the As-Filed Articles"). The As-Filed Articles recited that the initial member of the company was Uy Thien Hoang.

126. Uy Thien Hoang is Minh Vu Hoang's son.

127. The signature on the As-Filed Articles was not Uy Thien Hoang's genuine signature. Rather, upon information and belief, Uy Thien Hoang's name had been signed on the As-Filed Articles by Alex Le, who also signed the As-Filed Articles in his own name as witness.

128. Alex Le was Minh Vu Hoang's assistant.

129. Two weeks later, on about July 28, 2005, Minh Vu Hoang opened an account in Rocky's name at SunTrust Bank (account no. xxxxxxxx0951) ("the Rocky Account").

130. When the Rocky Account was opened. Minh Vu Hoang was the only authorized signatory.

131. Minh Vu Hoang is identified on the original signature card for the Rocky Account as "owner."

132. When she opened the Rocky Account, Minh Vu Hoang provided SunTrust Bank with what purported to be a copy of Rocky's articles of organization

133. The body of what Minh Vu Hoang provided to SunTrust was substantially identical to the body of the As-Filed Articles. However, the signature block differed from that of the As-Filed Articles in four respects:

    a.   The copy of the articles given to SunTrust bore what appears to be Uy Thien Hoang's genuine signature.

    b.   On the copy of the articles given to SunTrust, but not on the As-Filed Articles, the titles "President and Vice President" appears beneath Uy Thien Hoang's typed name.

    c.   On the copy of the articles given to SunTrust, the signature on the "Witness" line is not Alex Le's, but what purports to be the signature of Minh Vu Hoang's sister, Van Vu.

    d.   On the copy of the articles given to SunTrust, but not on the As-Filed Articles, the document is signed by Minh Vu Hoang as "Office Manager."

134. The following is a comparison of the signature blocks of the As-Filed Articles and the copy of the articles that was given to SunTrust:

As filed:

Given to SunTrust:



135. The Rocky Account was opened with an initial deposit of $400, the source of which is unknown.

136. The next three deposits were as follows:

    a.  On July 29, 2005, Gemini Title wired $268,852.47 into the account. These funds represented proceeds of the sale by Forest Heights of 5612 Delaware Drive, which is one of sales described above in ¶ 86.

    b.  On August 1, 2005, $432,911.76 was wired into the account. These funds represented proceeds of the sale of property held in the name of yet another of Minh Vu Hoang's sham entities, Wada General Partnership.

    c.  Also on August 1, 2005, a check in the amount of $10,000, payable to "Minh Vu for Rocky LLC." These funds represented proceeds of the sale of property held in the name of Cybele.

137. The funds referred to in the preceding paragraph constituted property of Minh Vu Hoang's bankruptcy estate.

138. On or about August 2, 2005, Minh Vu Hoang made out a check in the amount of $145,092.68, drawn on the Rocky Account, payable to "Law Office of Craig Parker." On the memo line of this check was written "North Point for" (sic).

139. The funds represented by the check referred to in the preceding paragraph were traceable to the deposits described in ¶ 136, above, and therefore constituted property of Minh Vu Hoang's bankruptcy estate.

140. On or about August 2, 2005, the check referred to in the preceding paragraph was deposited into the Yellow Account.

141. Two weeks later, on August 16, 2005, a check in the amount of $144,238.88 was drawn on the Yellow Account, payable to "Cohavey, Boozer, Devan & Dore." The check was signed by Craig Parker.

142. The check referred to in the preceding paragraph was applied toward the purchase of property (6608 North Point Road, Baltimore, MD) in the name of Mubilt General Partnership, which is a sham entity used by Uy Thien Hoang.

143. The funds represented by the check referred to in ¶ 141, above, were traceable to the deposit into the Yellow Account described in ¶ 140, above, and therefore to the deposits described in ¶ 136, above. As a result, those funds constituted property of Minh Vu Hoang's bankruptcy estate.

144. The property purchased by Mubilt using the funds represented by the check referred to in ¶ 141, above, was subsequently sold to a bona fide purchaser for value. As a result, plaintiff Rosen was not entitled to avoid the sale and recover the property for the benefit of the estate.

## 2.    *Central Avenue*

145. On or about August 25, 2006—more than a year after Minh Vu Hoang went into bankruptcy—Minh Vu Hoang caused one of her sham entities to sell property located at 6412 Central Ave., Capitol Heights, MD, which was titled in the sham entity's name.

146. The sham entity in whose name the property was titled was Osher, Inc.

147. The purchase price was $1.6 million.

148. The sales proceeds represented property of Minh Vu Hoang's bankruptcy estate.

149. Minh Vu Hoang caused almost half of the sales proceeds to be diverted to two of her other sham entities. Specifically—

    a. A sham entity named Sweet Wheel & Associates was paid $350,591.70, purportedly in satisfaction of a deed of trust.

    b. A sham entity named El Caballero General Partnership was paid $386,589.10, purportedly in satisfaction of a mechanic's lien.

150. As explained in ¶¶ 151–152, below, the mortgage and mechanic's lien were shams that were intended by Minh Vu Hoang to hinder, delay, and defraud creditors.

151. Sweet Wheel was the purported assignee of the purchase-money deed of trust encumbering the Central Avenue property. The purported assignment took place after Minh Vu Hoang caused the deed of trust to be paid off. (using funds from the Yellow Account, along with proceeds from the sale of properties titled in the names of Isbell General Partnership (one of Minh Vu Hoang's sham entities) and of Thanh Hoang (as Minh Vu Hoang's nominee). Instead of having the deed of trust be released, as is customary, the deed of trust was, at Minh Vu Hoang's request, assigned to Sweet Wheel. Since Sweet Wheel was not an entity separate from Osher (both of them being trade names and/or alter egos of Minh Vu Hoang), the assignment operated to extinguish the lien of the deed of trust by operation of law. Nevertheless, Minh Vu Hoang and others

acting in concert with her continued to foster the false impression that the lien remained in effect, in order to hinder, delay, and defraud Minh Vu Hoang's creditors.

152. El Caballero was the purported assignee of a mechanic's lien that had originally been filed by a contractor that had done work on the Central Avenue property. Minh Vu Hoang had disputed the validity of the mechanic's lien and the contractor had commenced litigation to enforce its lien. That litigation was settled by a payment to the contractor of $205,000 (the funds for which came from proceeds of the sale of a property titled in the name of Segal). However, the settlement was structured so that instead of the lien being released, it was assigned to El Caballero. Since El Caballero was not an entity separate from Osher (both of them being trade names and/or alter egos of Minh Vu Hoang), the assignment operated to extinguish the lien by operation of law. Nevertheless, Minh Vu Hoang and others acting in concert with her continued to foster the false impression that the lien remained in effect, in order to hinder, delay, and defraud Minh Vu Hoang's creditors.

153. Plaintiff Rosen has been unable to recover more than a small portion of the amounts paid to Sweet Wheel and El Caballero.

154. In addition to the amounts paid to Sweet Wheel and El Caballero, $850,000 was paid to an entity named A2K Retail, purportedly as an assignment fee.

155. While A2K Retail was not one of Minh Vu Hoang's sham entities, A2K Retail may have had an agreement with Minh Vu Hoang to kick back a portion of the $850,000 to Minh Vu Hoang or to otherwise use a portion of the $850,000 for her benefit. However, given the limited information about this payment that is currently available to the plaintiff, we do not currently allege that such a kickback occurred.

156.  Parker, acting as an agent of Law Offices LLC and/or Gemini Title, advised and assisted Minh Vu Hoang in connection with the structuring of the Central Avenue sale.

**G.  Losses to the estate resulting from the defendants' actions**

157.  As a proximate result of the defendants' assistance and participation in Minh Vu Hoang's asset-concealment scheme, Minh Vu Hoang's bankruptcy estate has suffered losses above and beyond those resulting from the previously described failures to turn over property of estate. Those additional losses include the following:

    a.  Plaintiff Rosen has been prevented from collecting, recovering, and/or liquidating assets that constitute property of the estate, or hindered in his efforts to collect, recover, and/or liquidate such assets The estate has therefore been deprived of the value of those assets. (These assets include those specifically described in this complaint, but are not limited to those assets.)

    b.  Plaintiff Rosen has reasonably incurred legal expenses, including attorney's fees, in attempting to collect, recover, and/or liquidate assets that constitute property of the estate but that, as a proximate result of the defendants' actions, were held in the names of third parties.

    c.  Plaintiff Rosen has reasonably incurred expenses in connection with investigating and untangling Minh Vu Hoang's financial dealings, including but not limited to retaining a forensic accountant.

### H. The discovery of facts giving rise to the claims against the defendants

158. Plaintiff Rosen exercised due diligence in seeking to identify claims that could be asserted against third parties on behalf of Minh Vu Hoang's bankruptcy estate.

159. However, due to the complicated and tangled nature of Minh Vu Hoang's assets and financial affairs, and Minh Vu Hoang's efforts (aided and abetted by the defendants) to conceal her assets and hinder creditors, Rosen did not discover the facts giving rise to the claims being asserted here until less than three years before the commencement of this adversary proceeding.

### Count 1
### Accounting under 11 U.S.C. § 542(a)
### (Gemini Title)

160. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

161. Gemini Title is obligated under 11 U.S.C. § 542(a) to account to plaintiff Rosen for the amount of the funds belonging to Minh Vu Hoang's bankruptcy estate that it received but failed to turn over to the estate.

WHEREFORE, plaintiff Rosen demands judgment against Gemini Title, in an amount not less than $3,317,297.14, plus prejudgment interest, attorney's fees, and costs.

### Count 2
### Accounting under 11 U.S.C. § 542(a)
### (Parker and Law Offices LLC)

162. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

163. Parker and Law Offices LLC are obligated under 11 U.S.C. § 542(a) to account to plaintiff Rosen for the amount of the funds belonging to Minh Vu Hoang's bankruptcy estate that they received but failed to turn over to the estate.

WHEREFORE, plaintiff Rosen demands judgment against defendants Parker and Law Offices LLC, jointly and severally, in an amount not less than $157,238.88, plus prejudgment interest, attorney's fees, and costs.

**Count 3
Conversion
(Gemini Title)**

164. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

165. Gemini Title converted property belonging to the bankruptcy estate of Minh Vu Hoang.

WHEREFORE, plaintiff Rosen demands judgment against Gemini Title, in an amount not less than $3,317,297.14, plus prejudgment interest and costs.

**Count 4
Conversion
(Parker and Law Offices LLC)**

166. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

167. Law Offices LLC converted property belonging to the bankruptcy estate of Minh Vu Hoang.

168. Parker caused Law Offices LLC to convert property belonging to the bankruptcy estate of Minh Vu Hoang.

WHEREFORE, plaintiff Rosen demands judgment against defendants Parker and Law Offices LLC, jointly and severally, in an amount not less than $157,238.88, plus prejudgment interest and costs.

**Count 5
Aiding and abetting
breach of fiduciary duty**

169. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

170. From the filing of her Chapter 11 petition on May 10, 2005 until plaintiff Rosen's appointment as Chapter 11 trustee on August 31, 2005, Minh Vu Hoang was debtor in possession, and as such she was subject to the fiduciary duties of a trustee.

171. By her postpetition actions described in this complaint, Minh Vu Hoang breached those fiduciary duties.

172. Gemini Title, Parker, and Law Offices LLC substantially assisted Minh Vu Hoang in breaching her fiduciary duties.

173. Gemini Title, Parker, and Law Offices LLC provided that substantial assistance knowing that Minh Vu Hoang was breaching her fiduciary duties as debtor in possession and intending to assist her in doing so.

174. As a proximate result of Minh Vu Hoang's breaches of her fiduciary duty, and of the substantial assistance provided by Gemini Title, Parker, and Law Offices LLC, Minh Vu Hoang's bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, plus prejudgment interest and costs.

### Count 6
### Co-conspirator liability
### for breaches of fiduciary duty
### by Minh Vu Hoang

175. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

176. From the filing of her Chapter 11 petition on May 10, 2005 until plaintiff Rosen's appointment as Chapter 11 trustee on August 31, 2005 Minh Vu Hoang was debtor in possession, and as such she was subject to the fiduciary duties of a trustee.

177. By her postpetition actions described in this complaint, Minh Vu Hoang breached those fiduciary duties.

178. Beginning at some point in time before Minh Vu Hoang filed for bankruptcy, and continuing through a point no earlier than August 31, 2005, Gemini Title, Parker, and Law Offices LLC conspired with Minh Vu Hoang to conceal Minh Vu Hoang's assets and to hinder, delay, and defraud creditors.

179. The postpetition actions of Minh Vu Hoang, Gemini Title, Parker, and Law Offices LLC that are described in this complaint were taken pursuant to the foregoing conspiracy and were within the scope of that conspiracy.

180. As a proximate result of Minh Vu Hoang's breaches of her fiduciary duty, her bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, plus prejudgment interest and costs.

### Count 7
### Aiding and abetting
### fraudulent conveyances

181. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

182. All the actions by Minh Vu Hoang that are described in this complaint were taken with the intent to hinder, delay, and defraud creditors.

183. The following actions taken (or caused to be taken) by Minh Vu Hoang constituted fraudulent conveyances:

a. The purchase of the properties listed in ¶ 86, above, in the name of her sham entities.

b. The sale of the properties listed in ¶ 86, above, as described in ¶¶ 98–113, above.

c.   The disbursement of the proceeds of the properties listed in ¶ 86, above, as described in ¶¶ 110–111, above.

d.   The transactions described in ¶¶ 138–141, above.

e.   The purported assignment of the deed of trust on the Central Avenue property to Sweet Wheel, as described in ¶ 151, above.

f.   The purported assignment of the mechanic's lien on the Central Avenue property to El Caballero, as described in ¶ 152, above.

g.   The payment of proceeds from the sale of the Central Avenue property to Sweet Wheel and El Caballero, as described in ¶ 149, above.

184.  Gemini Title, Parker, and Law Offices LLC substantially assisted Minh Vu Hoang in connection with the making of the fraudulent conveyances referred to in ¶ 183.

185.  Gemini Title, Parker, and Law Offices LLC provided that substantial assistance knowing that Minh Vu Hoang was engaging if fraudulent conveyances and intending to assist her in doing so.

186.  As a proximate result of Minh Vu Hoang's fraudulent conveyances, and of he substantial assistance provided by Gemini Title, Parker, and Law Offices LLC, Minh Vu Hoang's bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, but not less than $3,330,297.14, plus prejudgment interest and costs.

**Count 8
Co-conspirator's liability
for fraudulent conveyances**

187.  The allegations of ¶¶ 1–159, above, are incorporated here by reference.

188.  Beginning at some point in time before Minh Vu Hoang filed for bankruptcy, and continuing through a point no earlier than August 25, 2006, Gemini Title, Parker, and Law Offices LLC conspired with Minh Vu Hoang to conceal Minh Vu Hoang's assets and to hinder, delay, and defraud creditors.

189.  Minh Vu Hoang took the following actions (or caused them to be taken) pursuant to the conspiracy referred to in the preceding paragraph and within its scope:

    a.  The purchase of the properties listed in ¶ 86, above, in the name of her sham entities.

    b.  The sale of the properties listed in ¶ 86, above, as described in ¶¶ 98–113, above.

    c.  The disbursement of the proceeds of the properties listed in ¶ 86, above, as described in ¶¶ 110–111, above.

    d.  The transactions described in ¶¶ 1138–141, above.

    e.  The purported assignment of the deed of trust on the Central Avenue property to Sweet Wheel, as described in ¶ 151, above.

    f.  The purported assignment of the mechanic's lien on the Central Avenue property to El Caballero, as described in ¶ 152, above.

    g.  The payment of proceeds from the sale of the Central Avenue property to Sweet Wheel and El Caballero, as described in ¶ 149, above.

190.  The actions referred to in the preceding paragraph constituted fraudulent conveyances.

191.  As a proximate result of Minh Vu Hoang's actions within the scope of the conspiracy, her bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, but not less than $3,330,297.14, plus prejudgment interest and costs.

### Count 9
### Aiding and abetting
### conversion

192. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

193. By taking the following actions, or causing them to be taken, Minh Vu Hoang converted property of the estate or caused it to be converted:

    a.  The sale of the properties listed in ¶ 86, above, as described in ¶¶ 98–113, above.

    b.   The disbursement of the proceeds of the properties listed in ¶ 86, above, as described in ¶¶ 110–111, above.

    c.  The transactions described in ¶¶ 1138–141, above.

    d.  The payment of proceeds from the sale of the Central Avenue property to Sweet Wheel and El Caballero, as described in ¶ 149, above.

194. Gemini Title, Parker, and Law Offices LLC substantially assisted Minh Vu Hoang in connection with the actions referred to in ¶ 193.

195. Gemini Title, Parker, and Law Offices LLC provided that substantial assistance knowing that Minh Vu Hoang was converting property of her bankruptcy estate and intending to assist her in doing so.

196. As a proximate result of Minh Vu Hoang's actions, and of he substantial assistance provided by Gemini Title, Parker, and Law Offices LLC, Minh Vu Hoang's bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, plus prejudgment interest and costs.

**Count 10
Co-conspirator's liability
for conversion**

197.  The allegations of ¶¶ 1–159, above, are incorporated here by reference.

198.  Beginning at some point in time before Minh Vu Hoang filed for bankruptcy, and continuing through a point no earlier than August 25, 2006, Gemini Title, Parker, and Law Offices LLC conspired with Minh Vu Hoang to conceal Minh Vu Hoang's assets and to hinder, delay, and defraud creditors.

199.  Minh Vu Hoang took the following actions (or caused them to be taken) pursuant to the conspiracy referred to in the preceding paragraph and within its scope:

 a.  The sale of the properties listed in ¶ 86, above, as described in ¶¶ 98–113, above.

 b.  The disbursement of the proceeds of the properties listed in ¶ 86, above, as described in ¶¶ 110–111, above.

 c.  The transactions described in ¶¶ 1138–141, above.

 d.  The payment of proceeds from the sale of the Central Avenue property to Sweet Wheel and El Caballero, as described in ¶ 149, above.

200.  The actions referred to in the preceding paragraph constituted conversion of proptery belonging to Minh Vu Hoang's bankruptcy estate.

201.  As a proximate result of Minh Vu Hoang's actions within the scope of the conspiracy, her bankruptcy estate has been damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in an amount to be proved at trial, but not less than $3,330,297.14, plus prejudgment interest and costs.

### Count 11
### Contempt of Court
### (Gemini Title)

202. The allegations of ¶¶ 1–159, above, are incorporated here by reference.

203. After Minh Vu Hoang filed for bankruptcy, the properties listed in ¶ 86, above, constituted property of Minh Vu Hoang's estate and were therefore in this Court's constructive possession.

204. By carrying out the closing on the sale of those properties, Gemini Title interfered with property in the Court's constructive possession.

205. The proceeds of the sale of the properties listed in ¶ 86, above, constituted property of Minh Vu Hoang's estate and were therefore in this Court's constructive possession.

206. By disbursing the sales proceeds, Gemini Title interfered with property in the Court's constructive possession.

207. As a proximate result of the interference described above, Minh Vu Hoang's bankruptcy estate was damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in the amount of $3,317,297.14, plus prejudgment interest, attorney's fees, and costs.

**Count 12**
**Contempt of Court**
**(Parker and Law Offices LLC)**

208.  The allegations of ¶¶ 1–159, above, are incorporated here by reference.

209.  The funds deposited in the Yellow Account on July 29, 2005 and August 1, 2005 (as described in ¶¶ 138–140, above) constituted property of Minh Vu Hoang's estate and were therefore in this Court's constructive possession.

210.  By disbursing those funds as described in ¶¶ 141–142, above, Parker and Law Offices LLC interfered with property in the Court's constructive possession.

211.  The $13,000 paid to Parker and Law Offices LLC on May 31, 2005, as described in ¶ 115, above, constituted property of Minh Vu Hoang's estate and was therefore in this Court's constructive possession.

212.  By accepting and depositing the check for the $13,000 referred to in the preceding paragraph, Parker and Law Offices LLC interfered with property in the Court's constructive possession.

213.  As a proximate result of the interference described above, Minh Vu Hoang's bankruptcy estate was damaged.

WHEREFORE, plaintiff Rosen demands judgment against the defendants, jointly and severally, in the amount of $157,238.88, plus prejudgment interest, attorney's fees, and costs.

Dated: December 18, 2009.

Respectfully submitted,

/s/ *Neal Goldfarb*

Richard H. Gordin, No. 02634
Max Maccoby, No. 16653
Neal Goldfarb, No. 05396
BUTZEL LONG TIGHE PATTON, PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
T: (202) 454-2800
F: (202) 454-2805
rgordin@butzeltp.com
mmaccoby@butzeltp.com
ngoldfarb@butzeltp.com

Roger Schlossberg, No. 02021
SCHLOSSBERG & ASSOCIATES
134 West Washington St.
P.O. Box 4227
Hagerstown, MD 21741
T: (301) 739-8610
F: (301) 791-6302
rschlossberg@schlosslaw.com

*Counsel for Plaintiff*