Date signed March 31, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| Minh Vu Hoang | * | Case No.        05-21078-TJC |
| Thanh Hoang | * | Chapter       7 |
| Debtors | * | JOINTLY ADMINISTERED |
| ***************************************** | * | |
| | * | |
| Gary A. Rosen, Chapter 7 Trustee | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.     09-853 |
| | * | |
| Gemini Title & Escrow, LLC, *et al.* | * | |
| Defendants | * | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Gary A. Rosen, chapter 7 trustee, ("Plaintiff") filed a twelve-count complaint ("Complaint") against Gemini Title & Escrow, LLC, the Law Offices of Craig A. Parker, LLC and Craig A. Parker (collectively "Defendants") alleging, in sum, that Defendants knowingly aided and abetted Minh Vu Hoang (the "Debtor") in an asset-concealment scheme after she filed

1

bankruptcy and while she served as debtor-in-possession.  Defendants filed a motion to dismiss the complaint.  As pertinent here,[1]  Defendants contend that the doctrine of *in pari delicto* prevents recovery by Plaintiff.

Specifically, Defendants contend that, because the claims in the Complaint are predicated on wrongful conduct of the Debtor, the Debtor would be barred by the affirmative defense of *in pari delicto* from recovering from the Defendants.  They further argue that Plaintiff, as chapter 7 trustee, stands in the shoes of the Debtor and therefore is barred from bringing those claims.  Plaintiff disputes that the doctrine applies here because Debtor's and Defendants' actions occurred post-petition and the rationale for applying the doctrine to post-petition actions fails.  Plaintiff also contends that applying the doctrine here would undermine the policies of the Bankruptcy Code.

For the reasons set forth herein, the Court concludes that the Debtor's alleged wrongful conduct while serving as debtor-in-possession is not imputed to the Plaintiff, and will deny the motion to dismiss on the grounds of *in pari delicto*.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (O).

### Facts as Alleged in the Complaint

The Debtor filed a petition for relief under chapter 11 on May 10, 2005.  The Debtor served as debtor-in-possession until the Plaintiff was appointed a chapter 11 trustee on August

---

[1]  The motion to dismiss the complaint also contended that the Plaintiff failed to state a claim for relief and that the claims were time-barred.  The Court heard oral argument and, for the reasons set forth on the record, denied the motion to the extent it was based on failure to state a claim.  The Court dismissed counts 11 and 12 because the allegations did not raise sufficient grounds for finding contempt.  The Court also granted the motion, without prejudice, on the statute of limitations argument and took under advisement the question of whether the doctrine of *in pari delicto* bars the claims in the Complaint.

31, 2005.  The case was converted to chapter 7 on October 28, 2005, and the Plaintiff was appointed the chapter 7 trustee and continues to serve in that capacity.

Prior to filing bankruptcy, the Debtor engaged in a massive asset-concealment scheme and relied on Defendants in carrying out her scheme.  Since 1998, the Debtor purchased distressed real estate at foreclosure and sold those properties at a profit.  *Complaint*, Docket No. 1 at ¶14 (December 18, 2009).  The Debtor concealed those assets, through sham entities and paperless transactions, in an effort to impede judgment creditors from executing on any judgments.  *Id.* at ¶¶14-15.

The Debtor used defendant Gemini Title & Escrow, LLC ("Gemini Title") as the settlement company in the purchase and sale of hundreds of properties.  *Id.* at ¶¶39-41.  The Debtor also used an attorney trust account (the "IOLTA Account"), maintained by Craig A. Parker and the Law Office of Craig A. Parker LLC ("Parker"), as a private bank account exclusively for the Debtor's benefit.  *Id.* at ¶52.

The Debtor continued her asset-concealment scheme post-petition.  It is the Debtor's and Defendants' post-petition conduct as summarized below that serves as the basis for the claims in the Complaint.

The Debtor filed her bankruptcy Schedules and failed to disclose ownership interest in ten parcels of real property (the "Properties") and various "sham" partnerships.  *Id.* at ¶67.  From May 31, 2005 through August 26, 2005, the Debtor sold the Properties, which were titled in the name of sham entities.  *Id*. at ¶¶98-100.  The net proceeds of the sales totaled $3,317,297.14.  *Id.* at ¶¶99.  The Debtor directed the transfer of the sale proceeds to accounts that she controlled in the name of sham entities.  *Id.* at ¶57.

The Debtor failed to disclose her ownership interest in the Properties in the bankruptcy case. *Id.* at ¶67. She failed to seek or obtain Court approval for the sales. She provided no notice of the Properties or the sales to the creditors or the United States Trustee. *Id.* at ¶100. She did not account for the sale proceeds in the bankruptcy case or transfer the sale proceeds to a debtor-in-possession account. *Id.* at ¶102, 108.

Defendants knew that the Debtor filed bankruptcy on or about May 10, 2005. *Id.* at ¶¶71-77. Gemini Title conducted the closings of these sales and received the proceeds of the sales, which were deposited in an escrow account at SunTrust Bank. *Id.* at ¶¶101-103. Gemini Title distributed the sales proceeds pursuant to the Debtor's instructions, which were in whole or in substantial part, distributed to or for the benefit of entities, other than the seller. *Id.* at ¶¶109-111. All of these post-petition sales were sold to bona fide purchasers for value, and the Plaintiff was not entitled to avoid the sale and recover the property for the benefit of the estate. *Id.* at ¶113.

Parker also assisted in distributing post-petition funds from the sales of some of these properties, through a sham entity named Rocky LLC ("Rocky"). *Id.* at ¶¶120-144. On or about July 15, 2005, two months after the Debtor filed bankruptcy, Rocky was formed. *Id.* at ¶¶122. The articles of organization were not filed until July 14, 2007. *Id.* at ¶¶125. According to the articles, Uy Thien Hoang, Debtor's son, was the initial member of Rocky. *Id.* at ¶¶125-127. However, on July 28, 2005 the Debtor opened an account in Rocky's name at SunTrust Bank (the "Rocky Account") and she was the only authorized signatory.[2] *Id.* at ¶¶129-130. The Rocky Account was opened with an initial deposit of $400 and three deposits from sale proceeds of real property in the name of sham entities followed: (1) $268, 852.47 on July 29, 2005; (2)

---

[2] The signature blocks of the articles of organization filed with SunTrust Bank were different than what was filed with Maryland Department of Assessment and Taxation. *See Complaint* at ¶¶125, 132-134 (The Complaint shows digital images comparing the signature blocks of the articles of organization.).

$432,911.76 on August 1, 2005; and (3) $10,000 on August 1, 2005. *Id*. at ¶¶135-136. All of these funds were property of the estate. *Id*. at ¶137.

The Debtor wrote a check on August 2, 2005 in the amount of $145,092.68 drawn on the Rocky Account and payable to "Law Office of Craig Parker," which was then deposited into the IOLTA Account. *Id*. at ¶138. Parker later signed a check in the amount of $144,238.88 drawn on the IOLTA Account payable to "Covahey, Boozer, Devan & Dore." *Id*. at ¶141. That check was applied toward the purchase of yet another piece of real property (6608 North Point Road, Baltimore, Maryland), which was ultimately sold to a bona fide purchaser for value. *Id*. at ¶142. Ultimately, the Plaintiff was unable to avoid the sale and recover the property for the benefit of the estate. *Id*. at ¶144.

Lastly, Parker acting as an agent of the Law Office of Craig A. Parker LLC and Gemini Title, assisted the Debtor in diverting funds from the sale of 6412 Central Avenue, Capitol Heights, Maryland ("Central Avenue"). *Id*. at ¶¶145-156. On August 25, 2006, the Debtor caused one of her sham entities, Osher, Inc., to sell Central Avenue for $1.6 million. *Id*. at ¶¶145-147. The sale proceeds were property of the estate. *Id*. at ¶148. Approximately half of the sale proceeds were diverted to two other sham entities, Sweet Wheel & Associates and El Caballero General Partnership, purportedly in satisfaction of fictitious mortgage and mechanic's liens. *Id*. at ¶¶149-152. Again, the Plaintiff was unable to recover most of the proceeds of the sale for the benefit of the estate. *Id*. at ¶153.

### Conclusions of Law

Defendants bring their motion under Fed. R. Civ. P 12(b)(6), made applicable here by Fed. R. Bank. P. 7012. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 129 S. Ct. 1937,1949 (2009)

quoting Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint must contain

sufficient factual matter accepted as true to state a claim that is plausible on its face.  *Id.* at 1950

(citing *Bell Atlantic Corp. v. Twombly (Twombly)*, 550 U.S. 544, 555 (2007)).  A claim is

facially plausible

> when the plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than the sheer possibility a defendant
> acted unlawfully.  Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

The issue addressed herein is whether wrongful acts committed by the Debtor post-

petition while serving as a debtor-in-possession are imputed to the Plaintiff, as chapter 7 trustee,

so as to bar recovery under the doctrine of *in pari delicto*.  Defendants contend that Plaintiff

stands in the shoes of the Debtor because she is alleged to have committed the wrongful acts

while serving as debtor-in-possession, and the Plaintiff is the successor to the debtor-in-

possession.  According to the Defendants, under the doctrine of *in pari delicto*, Debtor would be

barred from recovering for wrongful conduct in which she participated, and therefore Plaintiff is

also barred from recovering from Defendants.  Plaintiff disputes that the doctrine applies to post-

petition actions by a debtor-in-possession.  For the reasons that follow, the Court concludes that

the doctrine does not bar Plaintiff from asserting his claims against Defendants.

"*In pari delicto potior est conditio defendantis*" translates to mean "[i]n a case of equal

or mutual fault … the position of the [defending] party … is the better one."  *Bateman Eichler,*

*Hill Richards, Inc. v. Berner (Bateman Eichler)*, 472 U.S. 299, 306 (1985) (citing Black's Law

Dictionary 711 (5th ed. 1979)).  "The doctrine of *in pari delicto* provides that a plaintiff may not

assert a claim against a defendant if the plaintiff bears fault for the claim." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co. (Lafferty)*, 267 F.3d 340, 354 (3d Cir. 2001).

"The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Bateman Eichler,* 472 U.S. at 306-307 (citations omitted).  The Supreme Court focused the application of the defense to actions where (1) the plaintiff bears at least substantially equal responsibility for the wrongdoings, and (2) preclusion of the suit would not interfere with enforcement of statutes and protection of the public.  *See Bateman Eichler* at 311 (discussing the application of *in pari delicto* in federal security law context).  *In pari delicto* is an equitable defense.  *Pinter v. Dahl*, 486 U.S. 622,632 (1988).  It is governed by federal law principles when applied to federal causes of action and state law principles when applied to state law causes of action.  *See Lafferty,* 267 F.3d at 361 ("While bankruptcy law mandates that the trustee step into the shoes of the debtor when asserting causes of action, state law generally provides the substantive law governing imputation for state law claims.").

As Defendants point out, the application of *in pari delicto* doctrine to claims by a bankruptcy trustee grounded in a debtor's pre-petition activities seems fairly well settled.  The doctrine is often applied to bar claims of a bankruptcy trustee against third parties.  The rationale for the application of the doctrine in such circumstances is explained in length in *Lafferty*.  *Id.* at 354.  Such actions are property of the estate pursuant to §541, which provides that the bankruptcy estate "is comprised of . . . all legal and equitable interest of the debtor as of the commencement of the case."  11 U.S.C. §541(a)(1).  "[T]he trustee stands in the shoes of the debtor and can assert only those causes of action possessed by the debtor."  3 Collier on

Bankruptcy ¶ 323.03[3][a] (16th ed. 2010).  Consequently, the trustee is subject to the same defenses a defendant could assert if the action had been brought by the debtor.  *Id.*  As explained by the Tenth Circuit Court of Appeals,

> We emphasize [that] § 541(a)(1) limits estate property to the debtor's interests "as of the commencement of the case." This phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate. In a temporal sense, it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate. In a qualitative sense, the phrase establishes the estate's rights as no stronger than they were when actually held by the debtor. Congress intended the trustee to stand in the shoes of the debtor and "take no greater rights than the debtor himself had." Therefore, to the extent [that the trustee] must rely on 11 U.S.C. § 541 for his standing in this case, he may not use his status as trustee to insulate the partnership from . . . wrongdoing . . .
> ****
> Neither the text of the [Bankruptcy] Code nor its legislative history suggests any exceptions to the principle that the strength of an estate's cause of action is measured by how it stood "as of commencement of the case."

*In re Hedged Investment Assoc., Inc.* 84 F.3d 1281,1285-86 (3rd Cir. 2001) (citations omitted).

As stated above, however, Plaintiff asserts claims against Defendants based on their involvement in Debtor's post-petition activities.  While Defendants cite numerous cases that address the application of *in pari delicto* to actions that arise pre-petition, they cite no cases that address the application of the doctrine to claims against third parties based on their involvement with post-petition misconduct by a debtor-in-possession.  Conversely, the authorities upon which the Plaintiff relies lead the Court to conclude that the Debtor's misconduct would not be imputed to the Plaintiff under the *in pari delicto* doctrine.

In *J.T.R. Corp. v. Harford Mutual Ins. Co. (J.T.R.),* 958 F.2d 602 (4th Cir. 1992), the Fourth Circuit held that post-petition arson by the principal of the debtor was not attributable to

the trustee and did not bar the trustee from recovering on the debtor's fire insurance policy.  In June 1979, J.T.R. Corporation filed for chapter 11 relief through its owner, Joseph Kenny.  J.T.R. operated a bar and grill, which Kenny deliberately destroyed by fire after the petition was filed.  After the fire, a chapter 11 trustee was appointed who sought to recover the fire insurance proceeds for the benefit of the estate.  The bankruptcy court held that Kenny's arson barred recovery by the estate.  The district court reversed.

In affirming the district court, the Fourth Circuit considered whether Kenny's arson was attributable to the estate.  The Court first addressed the cases of *Dery v. Citizen's Ins. Co. of Am. (Light)*, 23 B.R. 482 (Bankr. E.D.Mich. 1982), and *Unigard Mut. Ins. Co. v. O'Dwyer (Feiereisen)*, 56 B.R. 167 (Bankr. D.Ore. 1985).  In *Light*, the debtor committed arson before the bankruptcy petition was filed.  *J.T.R.*, 958 F.2d at 604.  The court there held that the trustee stands "in the shoes" of the debtor and has no greater rights than those held by the debtor at the time the petition was filed.  *Id.*  The *Light* court therefore barred recovery.  *Id.*  In *Feierson*, the debtor filed a chapter 7 petition, the case was converted to chapter 11, and was then reconverted to chapter 7.  *Id.*  Subsequently, the debtor burned the property.  *Id.*  The *Feierson* court held that the trustee was not barred from recovery because the debtor committed the arson after the reconversion to chapter 7 and after the trustee was appointed.  *Id.*

The Fourth Circuit recognized that *J.T.R.* fell between *Light* and *Feierson* – the arson occurred after the filing of the petition but before the trustee was appointed.  The court held that the determinative factor is the filing of the petition.  *Id.* at 605.  In a chapter 11, a debtor-in-possession is a fiduciary and owes the same duties as a trustee.  *Id.*  The debtor-in-possession "does not act in his own interests, but rather in the interests of the creditors."  *Id.*  Thus Kenny was a "third party to the transaction," and his actions were not attributable to the trustee.  *Id.*

*J.T.R.* strongly supports the conclusion that the *in pari delicto* doctrine does not bar Plaintiff's claims.  Plaintiff asserts claims based solely on Debtor's and Defendants' post-petition conduct.  The determinative factor here, like in J.T.R., is that the actions occurred after the filing of the petition.

To be sure, in *J.T.R.*, Kenny, the wrongdoer, was the principal of the debtor, while J.T.R. was the debtor-in-possession.  *Id.*   Here, the Debtor, the alleged wrongdoer, is herself the debtor-in-possession.  But upon the filing of her chapter 11 petition, the Debtor wore two hats, that of the debtor and that of the debtor-in-possession.  On the petition date, the Properties became property of the estate, and the Debtor personally lost all legal and equitable interest in them.  5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2010).  The Debtor became the fiduciary of the estate and was obligated to act in the interests of the creditors.  The Debtor, however, also existed – to use that term – in her personal capacity and separate from her status as debtor-in-possession.  The Complaint alleges that the Debtor sold the Properties and secreted the proceeds strictly in her personal capacity as debtor, to benefit herself, without regard to her position as debtor-in-possession.  In that regard, her alternate status as debtor was no different than that of Kenny, who acted individually in burning the estate's property, rather than in his capacity as a responsible person who controlled the estate.

 In *In re Sia*, 349 B.R. 640 (Bankr. D.Hawaii 2006), Sukamto Sia was an individual who filed for chapter 11 relief and served as debtor-in-possession for approximately two months.  A chapter 11 trustee was then appointed and several months later the case was converted to chapter 7, where the same trustee served as representative of the estate.  Throughout the case, Sia used many entities and bank accounts in foreign countries to control his assets and to frustrate the bankruptcy trustee in locating those assets.  *Id.* at 645-646.  Upon a motion to dismiss the

10

trustee's complaint, the court had to analyze whether the trustee was barred by the doctrine of *in pari delicto* from bringing claims against UBS, a Swiss banking institution, that allegedly conspired with Sia in converting property of the estate.

The *Sia* court found that

> [i]f the trustee's conspiracy claims are based upon postpetition activities of the conspirators, it does not matter whether or not the debtor is one of the conspirators. The debtor's postpetition unclean hands do not impair the ability of the trustee in bankruptcy to pursue the debtor and debtor's conspirators. . . . timing-whether the trustee's claims are based upon prebankruptcy or postpetition activities of the conspirators-is critical. As to prebankruptcy conspiracies, the trustee lacks standing, and the motion to dismiss will be granted. As to postpetition bankruptcies, the trustee has standing to sue on behalf of the estate. 11 U.S.C. § 323(b); Fed. R. Bankr. P. 6009.

*Id.* at 655.

Finally, the court in *In re R & R Associates of Hampton,* 402 F.3d 257 (1st Cir. 2005) held that a chapter 7 trustee could pursue a legal malpractice claim against prior chapter 11 counsel. The debtor was a partnership and its sole asset consisted of real estate in New Hampshire. Prior to filing chapter 11, the debtor's partners and the defendant law firm allegedly colluded in hiding assets of debtor's principals, who provided personal guarantees on debtor's loans. The defendants also failed to disclose their ongoing legal relationship with the debtor's partners in the chapter 11 retention application. The case later converted to chapter 7 and a trustee was appointed. While the court did not discuss the *in pari delicto* doctrine, the court allowed the chapter 7 trustee to bring malpractice and breach of fiduciary duty claims against the defendant law firm. The court expressly recognized that the chapter 7 trustee, "as successor to the debtor-in-possession and representative of the estate, plainly is entitled to pursue whatever legal claims belong to the estate." *Id.* at 265. The foregoing cases lead the Court to conclude

that the doctrine of *in pari delicto* does not bar a chapter 7 trustee from pursuing claims against third parties who participate in fraud or other misconduct post-petition.

Even aside from the foregoing authorities, however, the Court would reach the same conclusion by applying the imputation principles that courts consider under the *in pari delicto* doctrine. Under the law of imputation, an agent's fraud or applicable misconduct will be imputed to the principle if the agent commits the fraud (1) in the course of employment and (2) for the benefit of the principle. *Lafferty* at 359 (discussing imputation law in context of officer/corporation relationship). Neither element exists here.

As noted above, upon the filing of her chapter 11 petition, the Debtor wore two hats, that of the debtor and that of the debtor-in-possession. The complaint does not allege that the Debtor committed the asset-concealment scheme in the course of her service as debtor-in-possession. To the contrary, the Complaint alleges that Debtor acted wholly outside the scope of that role and strictly in her personal capacity by concealing her ownership and sale of the properties and secreting the sales proceeds through undisclosed bank accounts.

The Debtor also is alleged to have done so for her personal benefit and not for the benefit of the estate. The Debtor did not disclose her ownership interest in the Properties on her bankruptcy Schedules, did not obtain court approval for their sale and did not transfer the sale proceeds into any debtor-in-possession bank accounts or otherwise disclose the sales in the bankruptcy case. Under the "adverse interest exception" to the *in pari delicto* doctrine, the "fraudulent conduct will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation." *Id.* at 359 (citations omitted). Plaintiff unquestionably alleges the Debtor acted in her own interest and adverse to the estate.

Defendants' contend that the "sole actor" exception – which itself is an exception to the "adverse interest exception" – applies to the Debtor because she was the sole debtor-in-possession.  "[W]here the principal and agent are one and the same, the adverse interest exception is subject to . . . the 'sole actor' rule."  *In re Mediators*, *Inc.*, 105 F.3d 822, 827 (2d Cir. 1997) (citing Harold Gill Renschlein & William A. Gregory, *The Law of Agency and Partnership* § 64 at 121 (2d ed. 1990)).  Under the "sole actor" exception the agent's fraudulent conduct is imputed to the principal without regard to whether the agent's conduct is adverse to the principal where the agent is the sole representative of the principal.  *Lafferty* at 359.  As explained in *Lafferty*,

> The rationale for this rule is that the sole agent has no one to whom he can impart his knowledge, or from whom he can conceal it, and that the corporation must bear the responsibility for allowing an agent to act without accountability. *See id.* (citing *First National Bank of Cicero v. Lewco Secs. Corp.,* 860 F.2d 1407, 1417-18 (7th Cir.1988) and William M. Fletcher *et al., Fletcher Cyclopedia of the Law of Private Corporations* § 827.10, at 160 (perm. ed. rev.vol.1994)).

*Id*.  Stated otherwise, the agent's actions are imputed to the principal "because the party that should have been informed was the agent itself albeit in its capacity as principal."  *Mediators*, 105 F.3d at 827.

Here, the "sole actor" exception does not apply.  The Debtor indeed had "one to whom [she] can impart [her] knowledge, or from whom [she] can conceal it," *Lafferty* at 359, and did not only need to inform herself "in [her] capacity as principal."  *Mediators* at 827.  The Debtor was under a statutory obligation to inform the Court, the creditors and the United States Trustee of her ownership interest in and sale of the Properties, and the Complaint alleges she actively concealed that information.  Despite the many safeguards intended to preserve the assets of the estate for the benefit of creditors – a debtor's obligation to file schedules under penalty of perjury, the statutory requirement that sales of estate assets may be conducted after notice and

opportunity to object, a chapter 11 debtor's ongoing duty to account for estate assets – the Debtor allegedly acted totally without regard to the interests of the "principal." Therefore, the rationale of the "sole actor" exception does not apply.

A similar conclusion was reached by the court in In *Food Mgmt Group, LLC v. Rattet (Food Mgmt)*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008). There, the debtors managed 24 Dunkin' Donuts franchises (the "Franchises"), and prior to bankruptcy Dunkin' Donuts sued the debtors for failure to pay franchise fees. As part of their settlement agreement ("Settlement") with Dunkin' Donuts, the debtors and their principals, the Gianopoulos family, agreed to sell the Franchises and not have any further involvement, directly or indirectly, with them. During bankruptcy, Dunkin' Donuts moved to enforce the terms of the Settlement and the debtors filed a motion to conduct an auction of the Franchises, which included bidding procedures. Debtors' counsel was aware that one of the bidders in the auction was intimately associated with the Gianopoulos family, and that the Gianopoulos family secretly funded the deposit on the bid. However, debtors' counsel failed to disclose to the court that the Gianopoulos family was secretly funding a bid for the Franchises, in direct violation of the Settlement with Dunkin' Donuts and the court-appointed bid procedures.

The chapter 11 trustee filed a complaint against the prior chapter 11 counsel seeking to recover damages for the scheme to effectuate a sale of bankruptcy estate assets to the Gianopoulos family. Defendants challenged the chapter 11 trustee's standing under the *in pari delicto* doctrine, arguing that she did not have standing to sue a third party based upon wrongful conduct involving the debtors' principals.

The court examined the adverse interest exception and "sole actor" exception to the application of the *in pari delicto* doctrine. The court recognized that under the adverse interest

14

exception, management misconduct will not be imputed to a corporation if management acted entirely in its own interests and adversely to the interests of the corporation. *Id.* at 696 (quoting *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87 (2d Cir. 2000)). The court further recognized that the exception does not apply if it is subject to the "sole actor" rule. *Id.* at 697 (citations omitted). The court concluded that in the context of an 11 U.S.C. § 363(b)(1) sale, the approval of the court was required and the court was deceived by the true identity of the parties behind the bid. Therefore, the court itself was an innocent decision maker and the "sole actor" rule could not apply. The court concluded that the adverse interest exception was applicable and that the post-petition acts of the Gianopoulos family would not be imputed to the trustee.

Lastly, the Defendants raise a public policy concern that the Debtor may receive a windfall for her illegitimate actions if the Plaintiff can pursue actions against them. This point is not controlling. The Internal Revenue Service has filed a proof of claim in an amount exceeding $34 million, so the likelihood of a surplus in this case is remote. Further, the concern can be addressed in the future if a surplus exists. The creditors and the Plaintiff can move to disallow any surplus to the Debtor or Plaintiff can seek to limit any award in this adversary proceeding to the amount of claims in the bankruptcy case. The benefit of potentially providing a greater distribution to creditors by allowing this action to proceed outweighs the slim (and addressable) possibility that a surplus would ultimately be given to the Debtor.

## Conclusion

For the foregoing reasons, the Court will deny Defendants' motion to dismiss the complaint to the extent it asserts that Plaintiff is barred from pursuing his claims by the doctrine of *in pari delicto*. The Court will enter an order accordingly.

Cc:    All parties
       All counsel

**<u>END OF MEMORANDUM</u>**