Date signed August 31, 2011



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| Minh Vu Hoang and Thanh Hoang | * | Case No.         05-21078-TJC |
| | * | Chapter         7 |
| | * | JOINTLY ADMINISTERED |
| Debtors | * | |
| ****************************************** | * | |
| Gary A. Rosen, Chapter 7 Trustee | | |
| | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.    09-853 |
| Gemini Title & Escrow, LLC et al. | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OF DECISION**

Gary A. Rosen, the chapter 7 Trustee, ("Plaintiff") has brought this three count amended complaint against Craig A. Parker ("Parker"), Gemini Title & Escrow, LLC, and the Law Offices of Craig A. Parker, LLC ("Law Offices of Parker") (collectively "Defendants"). Before the

1

Court is Defendants' motion to dismiss the amended complaint (the "Motion"), Plaintiff's opposition and Defendants' reply. In Counts I and II of the amended complaint, Plaintiff seeks turnover under 11 U.S.C. §542(a)[1] of property acquired by the Defendants post-petition. In Count III, Plaintiff asserts a claim of co-conspirator liability for conversion against the Defendants Parker and the Law Offices of Parker. The Court held a hearing on the Motion and opposition on July 11, 2011. For the reasons stated herein, the Court will dismiss the amended complaint. However, as will be discussed, the Plaintiff will be given fourteen days to amend the complaint to assert a claim of conspiracy to hinder, delay and defraud the estate, without prejudice to Defendants' rights.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334, 157(a) and Local Rule 402 of the United States District Court of the District of Maryland. This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A) & (O).

### Pertinent Facts as Alleged in the Amended Complaint

Minh Vu Hoang (the "Debtor") filed a petition for relief under chapter 11 on May 10, 2005. The Debtor served as debtor-in-possession until the Plaintiff was appointed a chapter 11 trustee on August 31, 2005. The case was converted to chapter 7 on October 28, 2005, and the Plaintiff was appointed the chapter 7 trustee and continues to serve in that capacity.

Prior to filing bankruptcy, the Debtor engaged in a massive asset-concealment scheme. Since 1998, the Debtor purchased distressed real estate at foreclosure and sold those properties at a profit. The Debtor concealed those assets, through sham entities and paperless transactions, in an effort to impede judgment creditors from executing on any judgments and to avoid paying income tax on the transactions. She used more than 200 sham entities, many of which were

---

[1] Hereinafter, all statutory references are to the Bankruptcy Code found at Title 11 of the United States Code, 11 U.S.C. §101 *et seq.*, unless otherwise noted.

categorized as general partnerships. However, the purported partnerships were instrumentalities and alter egos of the Debtor.

It is further alleged that the Debtor continued that scheme post-petition by selling, without knowledge or approval of the Plaintiff or the Court, ten properties titled in the name of sham entities so that she could keep the proceeds out of the reach of the Plaintiff. The amended complaint claims that Defendants conspired with the Debtor in furtherance of this scheme, and seeks to impose liability for the parties' post-petition acts. It is alleged that on August 25, 2006, more than one year after the Debtor filed her bankruptcy petition, the Debtor sold 6412 Central Avenue, Capitol Heights, MD ("Central Avenue") which was titled under Osher, Inc., a sham entity, for $1.6 million. Central Avenue was property of the bankruptcy estate and the sales proceeds therefore were property of the estate. The Debtor requested the sales proceeds to be split among two of her other sham entities: Sweet Wheel & Associates ("Sweet Wheel") and El Caballero General Partnership ("El Caballero"). Parker and the Law Offices of Parker advised and assisted the Debtor in connection with the structuring of the Central Avenue sale.

The Plaintiff filed the initial complaint in this case on December 18, 2009, which was previously dismissed without prejudice. The amended complaint and the Motion followed.

## Conclusions of Law

Defendants bring the Motion under Fed. R. Civ. P 12(b)(6), made applicable here by Fed. R. Bank. P. 7012. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, --- U.S. ---,---, 129 S.Ct. 1937,1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim that is plausible on its face. *Id.*

at 1950 (citing *Bell Atlantic Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 555 (2007)). A claim is facially plausible

> when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than the sheer possibility a defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

*Counts I and II*

As stated above, in Counts I and II, Plaintiff seeks recovery of post-petition transfers under §542. This Court recently dismissed post-petition §542 claims brought by this Plaintiff in a different adversary proceeding. *Rosen v. Dahan (In re Hoang) ("Dahan")*, Ch. 7 Case No. 05-21078, Adv. No. 11-00087, slip op. (D. Md. June 28, 2011), *appeal docketed*, No. 11-cv-02320-DKC (D. Md. Aug. 26, 2011). In *Dahan*, this Court applied the holding of *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C . et al. ("Deckelbaum")*, 275 B.R. 737 (D. Md. 2001), which held that §542 is limited in its application to property that is in the defendant's possession at the time of the filing of the bankruptcy case. Therefore, property of the estate that came into a defendant's control post-petition is not subject to a turnover action under §542. Just as in *Dahan,* the underlying transactions at issue in this case occurred post-petition and the property of the estate was not in Defendants' control at the time of the filing of the Debtor's petition. In *Dahan*, this Court recognized that the issue of whether §542 can be applied to a post-petition transfer is not free from doubt**.** *Dahan*, slip op. at 7-9. Nevertheless, this Court followed *Deckelbaum* and will do so here as well. Accordingly, the Court will dismiss Counts I and II of the amended complaint.

*Count III*

Except as discussed below, in Count III, the amended complaint asserts a claim against the Defendants for conspiracy to convert assets of the estate. In support of the underlying conversion claim, the amended complaint alleges as follows: On or about August 25, 2006—more than a year after Debtor went into bankruptcy—Debtor caused one of her sham entities to sell Central Avenue, which was titled in the sham entity's name. The sales proceeds represented property of the Debtor's bankruptcy estate. The Debtor caused almost half of the sales proceeds to be diverted to two of her other sham entities. A sham entity named Sweet Wheel was paid $360,591.70, purportedly in satisfaction of a deed of trust, and a sham entity named El Caballero was paid $386,589.10, purportedly in satisfaction of a mechanic's lien. Docket No. 29, ¶¶154 – 165. Both payments were by check. Thus, Plaintiff alleges the Defendants conspired with the Debtor to convert the sales proceeds. Under Maryland law, these allegations do not state a claim for relief.

"[C]onspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.*, 797 A.2d 824, 838 (Md. App. 2002) (citation omitted) (internal quotation marks omitted). "Rather, [t]he underlying tort is the cause of action that should be set forth in a separate count. The alleged aiders, abettors, and co-conspirators are simply additional parties jointly liable with the principal perpetrator." *Id.* (citation omitted) (internal quotation marks omitted). A claim for civil conspiracy requires proof of the following elements:

> 1) A confederation of two or more persons by agreement or understanding;
> 2) [S]ome unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and
> 3) Actual legal damage resulting to the plaintiff.

*Lloyd v. General Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (citations omitted) (internal quotation marks omitted).

Here, the underlying tort alleged by Plaintiff is conversion. "A 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen ("Jasen")*, 731 A.2d 957, 963-964 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (1954)). " 'The gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled.' Accordingly, a conversion occurs at such time as a person is deprived of property which he is entitled to possess." <u>Staub v. Staub</u> 376 A.2d 1129, 1131 (Md. App. 1977) (citations omitted).

However,

> [t]he general rule is that monies are intangible and, therefore, not subject to a claim for conversion. An exception exists, however, when a plaintiff can allege that the defendant converted specific segregated or identifiable funds. This rule is well-synthesized in 1 Fowler V. Harper et al., The Law of Torts, § 2.13, at 2:56 (3d ed. 1986), which notes that conversion claims generally are "recognized in connection with funds that have been or should have been segregated for a particular purpose or that have been wrongfully obtained or retained or diverted in an identifiable transaction.

*Jasen*, 731 A.2d at 966 (citations omitted) (internal quotation marks omitted). The principle was addressed succinctly by the United States District Court for the District of Maryland, as follows:

> [i]n Maryland, 'money, i.e., currency, is not subject to a claim of conversion unless the plaintiff seeks to recover specific segregated or identifiable funds.' *Darcars Motors of Silver Spring, Inc. v. Borzym,* 379 Md. 249, 841 A.2d 828, 834 n. 3 (Md. 2004). Accordingly, to succeed, the Baharis must show that Lloyd's has an obligation to return the specific bills that were charged to the Baharis' account. *Id.* By contrast, if Lloyd's merely owes a debt of money, which could be satisfied by check or other currency besides the specific bills that the Baharis tendered, the Baharis' cause of action for conversion must fail. *Id.* Further, in order for a conversion claim to succeed, the Baharis must show that the transferred

6

> money had not been commingled with other funds. *Allied Investment Corp. v. Jasen,* 354 Md. 547, 731 A.2d 957, 967 (Md. 1999). Indeed, when funds are commingled, "the cash loses its specific identity." *Id.*
>
> In this case, the Baharis cannot "point to any particular currency as the subject of the purported conversion," so the funds are not readily identifiable. *Coots v. Allstate Life Ins. Co.,* 313 F. Supp. 2d 539, 543 (D. Md. 2004). Moreover, the Baharis do not allege that the premium for the insurance policy was maintained by Lloyd's in a separate, segregated account. Thus, any proceeds that Lloyd's may have retained from the Baharis' escrow account are not specifically identifiable enough to be the subject of a conversion claim. The court therefore will dismiss the Baharis' conversion claim against Lloyd's.

*Bahari v. Countrywide Home Loans*, 2005 WL 3505604 *5-6 (D. MD 2005).

Here, the Plaintiff does not allege that the Defendants have an obligation to return the specific funds that were purportedly diverted from the sale, nor does it allege the funds remain segregated and not commingled with other funds. Accordingly, Count III will be dismissed to the extent it asserts a claim for civil conspiracy to convert the proceeds from the sale of Central Avenue.

Finally, paragraph 173 of the amended complaint states that

> [b]eginning at some point in time before Minh Vu Hoang filed for bankruptcy, and continuing through a point no earlier than August 25, 2006, [the Defendants] conspired with Minh Vu Hoang and others to conceal Minh Vu Hoang's assets and to hinder, delay and defraud her creditors.

*Id*. at ¶173. This claim is not set out in a separate count and, perhaps for this reason, the Motion does not address it. In the opposition to the Motion, Plaintiff again asserts that when all of the allegations "are considered in a light most favorable to the Plaintiff, as required here, they reasonably support an inference that Parker and his LLC conspired with Minh Vu Hoang to hide her assets and to hinder, delay and defraud her creditors." Docket No. 49 at 21 (footnote omitted). In the reply brief, Defendants again do not address this claim except to state it is

7

beside the point, because the tort underlying the conspiracy claim is conversion, not a claim for conspiracy to hinder, delay and defraud the estate. Docket No. 50 at 18.

Thus, the matter is in an unusual posture. The amended complaint facially states a claim, although not as a separate count, and the claim is reasserted by the Plaintiff in the briefing, but is not addressed in the Motion. Under these circumstances, the Court will give the Plaintiff fourteen days to amend the complaint to assert a claim for conspiracy to hinder, delay or defraud the estate.

## Conclusion

The Court will dismiss the amended complaint, but will give the Plaintiff fourteen days to amend the complaint one final time to assert a claim for conspiracy to hinder, delay or defraud creditor, without prejudice to Defendants rights.


Cc:   All parties
      All counsel


**END OF MEMORANDUM**