Date signed January 20, 2012



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
## at GREENBELT

| | | |
|---|---|---|
| In Re: | * | |
| Minh Vu Hoang and Thanh Hoang | * | Case No.    05-21078-TJC |
| | * | Chapter    7 |
| Debtors | * | Jointly Administered |
| ************************************ | * | |
| Gary A. Rosen, Trustee | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | |
| Gemini Title & Escrow, LLC, et al. | * | Adv. No.    09-00853 |
| | * | |
| | * | |
| Defendants | * | |

## MEMORANDUM OF DECISION GRANTING
## <u>DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

Before the Court is the Motion to Dismiss Second Amended Complaint (the "Motion") (Docket No. 62) filed by Gemini Title & Escrow, LLC, the Law Offices of Craig A. Parker, LLC, and Craig A. Parker (collectively, "Defendants"). Gary A. Rosen, Chapter 7 Trustee for the Estate of Minh Vu Hoang and Thanh Hoang ("Plaintiff"), filed an opposition to the Motion

(Docket No. 71), and Defendants have responded (Docket No. 80).  For the reasons set forth herein, the Court will grant the Motion and dismiss the Second Amended Complaint.

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§1334, 157(b)(2)(A) and (O) and Local Rule 402 of the United States District Court of the District of Maryland.  This is a core proceeding under 28 U.S.C. §157(A), (E), (H) and (O).

*Background*

Plaintiff alleges that the debtor, Ming Vu Hoang ("Debtor"), engaged in a massive asset concealment scheme that continued post-petition.  In the original and prior-amended complaint, Plaintiff asserted various theories against Defendants based on their alleged involvement in that scheme.  In a memorandum of decision dated March 31, 2011 (Docket No. 23) and a memorandum of decision dated August 31, 2011 (Docket No. 55), the Court dismissed the claims as brought in the two prior complaints, respectively.  In the later memorandum of decision, the Court granted the Plaintiff an opportunity to amend the complaint to assert a claim of conspiracy to hinder, delay and defraud creditors.[1]

Plaintiff filed the Second Amended Complaint on September 14, 2011, asserting a count of conspiracy to hinder, delay and defraud creditors.  Defendants filed the Motion, which has been fully briefed by the parties.  The Court held a hearing on the Motion on November 10, 2011, and took the matter under advisement.

The facts alleged in the Second Amended Complaint are not materially different than those alleged in the previous complaints.  The Court therefore incorporates here the "Statements of Facts as Alleged in the Complaint" as set forth in the March 31, 2011 Memorandum of

---

[1] The then pending complaint referred to a claim of conspiracy to hinder, delay or defraud creditors, but the claim was otherwise not addressed by the parties in the prior motion to dismiss.  *See* Memorandum of Decision at 7-8 (Docket No. 55).

2

Decision and the August 31, 2011 Memorandum of Decision. *See* Docket No. 23 at 2-5; Docket No. 55 at 2-3.

The Second Amended Complaint alleges that the Defendants and the Debtor engaged in a broad conspiracy to hinder, delay and defraud creditors. Many of the allegations that support the conspiracy in the Second Amended Complaint were previously asserted in support of claims that have been dismissed due to limitations, but the Plaintiff continues to assert them in support of the alleged conspiracy. Because of limitations consideration, the specific claim for recovery is now limited to the following allegations, which Plaintiff contends were done in furtherance of the conspiracy: The Debtor sold the real property at 6421 Central Avenue, Capital Heights, MD (the "Central Avenue Property") on August 25, 2006, which is more than three years before this adversary proceeding was filed on December 18, 2009. The Debtor caused the proceeds from the sale to be disbursed to two sham entities, Sweet Wheel & Associates, in the amount of $369,591.70, and El Caballero General Partnership, in the amount of $385,589.10. The check to Sweet Wheel & Associates was reissued on December 21, 2006, within the three year period of the filing of the adversary proceeding. The Central Avenue Property and its proceeds were property of the bankruptcy estate. The Defendants, Parker in particular,[2] advised and assisted the Debtor on how to hide the Debtor's ownership in sham entities and real estate. Specifically, on January 11, 2005, Parker sent an email to the Debtor advising her to settle ongoing litigation with a lien holder, Erroll Brown. The email suggests that if Parker represented the Debtor in the foreclosure of a mechanic's lien, it would alert Brown that the Debtor owns more sham entities that have real estate holdings.

---

[2]  Craig A. Parker is the managing member of defendants Gemini Title and Law Offices of Craig A. Parker LLC (respectively "Gemini Title" and "Law Offices LLC").

3

The email and subsequent transfers of property of the estate allegedly occurred post-petition.

*Conclusions of Law*

Defendants bring the Motion under Fed. R. Civ. P. 12(b)(6), made applicable here by Fed. R. Bankr. P. 7012. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, ---U.S. ---, ---, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss, a complaint must contain sufficient factual matter accepted as true to state a claim that is plausible on its face. *Id.* at 1950 (citing *Bell Atlantic Corp. v. Twombly (Twombly)*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than the sheer possibility a defendant acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

The basic elements of a civil conspiracy claim are well established:

> Civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an unlawful act not in itself illegal, with the further requirement that the act or means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24, 867 A.2d 276, 290 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221, 269 A.2d 815, 824 (1970)). The plaintiff "must also prove the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Id.* at 25, 867 A.2d at 290. The tort of civil conspiracy "lies in the act causing the harm; the agreement to commit the act is not actionable on its own but rather is in the nature of an aggravating factor." *Id.*; *Alleco*, 340 Md. at 189, 665 A.2d at 1044–45 (noting that

4

> conspiracy "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff"). A participant in the conspiracy may be held liable civilly as long as some act was performed in furtherance of the conspiracy, even if performed by another participant. *Id.*

*Shenker v. Laureate Education, Inc. (Shenker)*, 983 A.2d 408, 428-429 (Md. 2009).

The Second Amended Complaint alleges that the Defendants and the Debtor engaged in a conspiracy to hinder, delay and defraud creditors. Stated otherwise, the claim is conspiracy to commit fraudulent transfers. As pertinent here, Defendants contend that the Second Amended Complaint must be dismissed because the Plaintiff has not alleged, and cannot allege, that the Defendants are legally capable of committing the fraudulent transfers. They contend such liability can only be imposed on parties who were transferees or transferors of the alleged fraudulent transfer. The Court agrees, based on the precedent of the Maryland Court of Appeals and the United States District Court for the District of Maryland, described below.

In *Van Royen v. Lacey,* 277 A.2d 13 (Md. 1971), the Maryland Court of Appeals recognized a claim of conspiracy to hinder, delay or defraud creditors. There, the appellant, Irene Van Royen, sued Robert H. Lacey ("Lacey") for conversion of funds she gave him for investment. While that suit was pending Lacey, his wife and mother-in-law conveyed a house owned jointly by them to Lacey's brother-in-law for no consideration. *Id.* at 14. Immediately thereafter, the brother-in-law reconveyed the house back to Lacey's wife and mother-in-law, again without consideration, thereby divesting Lacey of any interest in the house. The wife and mother-in-law then obtained a deed of trust loan against the house and spent the proceeds. The appellant obtained a judgment of conversion against Lacey, which remained unsatisfied. She then sued Lacy, his wife, mother-in-law and brother-in-law claiming they fraudulently conspired to prevent her from satisfying the judgment she obtained against Lacey.

On appeal, the Court of Appeals addressed the question:

> whether a general unsecured creditor who has no lien on the debtor's property, nevertheless has a sufficient legal interest in the property to enable her to maintain an action for conspiracy against [Lacey] and his coconspirators who had fraudulently transferred the property in order to hinder, delay and defraud that creditor.

*Id.* In resolving the issue, the court first noted the well-established two prong standard for conspiracy: (1) some unlawful act done in furtherance of the conspiracy; and (2) actual legal damages resulting to the victim-plaintiff. *Id.* at 15. Significant here, the court ruled that a fraudulent conveyance or conveyance made with intent to defraud is sufficient to meet the first prong of the test, namely an "unlawful act." The court determined, however, that the second prong of the test was not met because the transfer occurred before the appellant obtained her judgment against Lacey. Until that occurs, a general creditor has no "legally vested interest" in the property that is transferred. *Id* at 16. "The appellant's inchoate interest in the property was sufficient to prevent a fraudulent conveyance of that property because of the terms of the Maryland statute; it is not, however, sufficient to maintain a suit for conspiracy to defraud." *Id*.

The Plaintiff alleges that the property that was fraudulently transferred was property of the estate. Upon the filing of a chapter 7 case, all of the Debtor's legal and equitable interests in property become property of the estate. 11 U.S.C. §541(a). The chapter 7 trustee is charged with administering those assets and is vested with the rights and powers of a judicial lien creditor, among others. 11 U.S.C. §544. Upon the filing of the petition, the chapter 7 trustee estate has a "legally vested interest" in all property of the estate, and therefore the complaint sufficiently alleges the Plaintiff suffered actual legal damages necessary to state a conspiracy claim under *Van Royen*.

The analysis does not end there, however.  In *Van Royen,* each defendant was a transferee and/or a transferor of the real estate.  There has been a recent line of cases in the federal district courts and state courts in Maryland, among other jurisdictions, that address the question of whether a defendant in a civil conspiracy claim must be legally capable of committing the underlying tort.  The seminal case is *BEP, Inc. v. Atkinson (Atkinson)*, 174 F. Supp. 2d 400 (D. Md. 2001), in which the court addressed whether a defendant who owed no duty to the plaintiff could be liable for civil conspiracy to breach a fiduciary duty.  Citing *Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (Applied Equipment)*, 869 P.2d 454 (Cal. 1994), the court determined that "[t]ort liability arising from a conspiracy presupposes that the coconspirator is legally capable of committing the tort, that is, that she owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty."  *Atkinson*, 174 F. Supp. 2d at 409.  Further quoting *Applied Equipment*, the court held that "[a] cause of action for civil conspiracy may therefore not arise if the alleged coconspirator, although allegedly a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing."  *Id*.  Because the defendant there did not owe the plaintiff a fiduciary duty, the defendant could not be legally capable of committing the underlying tort and therefore could not be liable for civil conspiracy.  *Id.*

Further, in *Shenker*, 983 A.2d 408 (Md. 2009), the Maryland Court of Appeals imposed the requirement that a defendant must be legally capable of committing the underlying tort to be liable for civil conspiracy.  983 A.2d at 428.  While *Shenker* addressed a claim of conspiracy to commit breach of fiduciary duty, its holding is not so limited: "We … hold that a defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged."  *Id.* at 428.

Here, Plaintiff argues that the holding in *Atkinson* is limited to claims of conspiracy to commit breach of fiduciary duty or where the defendants have some unique relationship with the plaintiff. However, the line of cases applying *Applied Equipment* in California and *Atkinson* and *Shenker* in Maryland do not bear this out.

*Applied Equipment* itself did not involve a claim of conspiracy to commit a breach of fiduciary duty or unique relationship. Rather, the California Supreme Court examined whether a contracting party could be held liable in tort for conspiracy to interfere with its own contract. 869 P.2d at 455. After examining California caselaw, the court determined that "tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the underlying tort, i.e., that he or she owes a duty to plaintiff . . . and is potentially subject to liability for breach of that duty." *Id.* at 457. The court refused to hold the defendants liable for civil conspiracy because they had no duty to refrain from interfering with a contract to which they were parties. *Id.* at 459, 463. Since *Applied Equipment*, California courts have extended the limitation on civil conspiracy, requiring conspirators to be legally capable of committing the underlying tort in a wide variety of contexts not limited to breaches of fiduciary duty.[3]

---

[3] In *Chavers v. Gatke Corp.*, 132 Cal. Rptr. 2d 198 (Cal. Ct. App. 2003), the California Court of Appeal considered civil conspiracy in a products liability case. The court looked to *Applied Equipment* and determined that a conspirator "must have owed a legal duty of care to the plaintiff, one that was breached to the latter's injury." *Chavers*, 132 Cal. Rptr. 2d at 201. The court determined that the duty could arise under statute or by common law, but "[a] duty, however, independent of the conspiracy itself, must exist in order for substantive liability to attach." *Id.* at 203. Because the plaintiff was not legally capable of being held liable for the underlying products liability tort, the court determined the trial court was correct in declining to give the jury civil conspiracy instructions. *Id.* at 201, 203; s*ee also Tilley v. Ampro Mortgage*, No. S-11-1134, 2011 WL 5921415, at *10-*11 (E.D. Cal. Nov. 23, 2011) (citing *Applied Equipment* and dismissing claim of civil conspiracy because complaint did not plead facts showing defendant was legally capable of defrauding the plaintiff); *Wilder v. JP Morgan Chase Bank, N.A.*, No. SACV 09-0834, 2009 U.S. Dist. LEXIS 124242, at *19-*21 (C.D. Cal. Nov. 25, 2009) (citing *Applied Equipment* and finding one defendant could not be part of a civil conspiracy because it was not legally capable of violating the Truth in Lending Act); *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*, No. C 06-7541, 2007 WL 2288329, at *4-*6 (N.D. Cal. Aug. 9, 2007) (noting that defendants must be legally capable of committing the underlying tort of fraud in order to be liable for civil conspiracy).

Maryland courts have also extended the requirement that conspirators be legally capable of committing the underlying tort to torts beyond breach of fiduciary duty. In *Bahari v. Countrywide Home Loans (Bahari)*, No. CCB-05-2085, 2005 WL 3505604 (D. Md. 2005), the court considered a motion to dismiss a complaint that included a count of civil conspiracy. The court examined an allegation that one of the defendants had committed civil conspiracy by intentionally and wrongfully charging the plaintiff's account with exorbitant insurance charges, forcing the plaintiff into an unconscionable contract, and unlawfully foreclosing on the plaintiff's property. *Bahari*, 2005 WL 3505604, at *6. The court dismissed the civil conspiracy claim because the complaint alleged no duties owed by the defendant, and the defendant was therefore not legally capable of violating contractual duties owed to the plaintiff. *Id.*

In a more recent opinion, the court dismissed a complaint asserting conspiracy to commit fraud where the defendant owed no duty of care to the plaintiff and therefore was not legally capable of committing the underlying torts of fraud. *Farwell v. Story*, No. DKC 10-1274, 2011 WL 2359622, at *4 (D. Md. June 8, 2011).

Finally, in a somewhat related context, the Maryland Court of Special Appeals applied *Shenker* in *Wasserman v. Kay (Wasserman)*, 14 A.3d 1193 (Md. Ct. Spec. App. 2011) to a claim of conspiracy to commit conversion. In *Wasserman*, the court examined a count that alleged conspiracy to convert monies in an investment vehicle. 14 A.3d at 1203. The court cited *Shenker* for the proposition that civil conspiracy requires the defendant to be legally capable of committing the underlying tort. *Id.* at 1220. Because fungible monies cannot be converted, there is no possibility of committing the underlying tort of conversion and, therefore, no civil conspiracy. *Id.* No case in Maryland of which this Court is aware has rejected the requirement

9

that a plaintiff must allege that a defendant is legally capable of committing the underlying tort to assert a conspiracy claim.

A review of these cases leads the Court to conclude that, in Maryland, the "legally capable" requirement is now an element of a civil conspiracy claim. Where the conspiracy claim is based on an underlying tort that requires a breach of a duty for the imposition of liability, the "legally capable" requirement means that the plaintiff must assert the alleged conspirator "owes a duty to the plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Atkinson*, 174 F. Supp. 2d at 409. Here, however, the conspiracy claim is based on an alleged fraudulent conveyance, which does not require a showing of a breach of a duty to establish liability.[4]

In light of the rationale of *Atkinson* and *Applied Equipment*, the Court concludes that a claim for conspiracy to commit fraudulent transfer requires that the alleged conspirator must be a party to the "conveyance made" or the "obligation incurred." Md. Code Ann., Com. Law §§15-204, 207. As stated in *Applied Equipment*, "[c]onspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already

---

[4] As stated above, in *Van Royen*, the Maryland Court of Appeals recognized that a statutory fraudulent conveyance claim was sufficient to constitute the "unlawful act" for a conspiracy claim. *Van Royen*, 277 S.2d at 15. Specifically, *Van Royen* held that the chancellor's findings that the transfers "should be set aside as violative of either Section 4 (conveyance by insolvent) or Section 7 (conveyance made with intent to defraud) of the Uniform Fraudulent Conveyance Act" satisfied the first prerequisite of a civil conspiracy claim. *Id*. Maryland continues to recognize claims based on both constructive fraudulent transfers, Md. Code Ann., Com. Law §15-204 and transfers made with actual intent to defraud, Md. Code Ann., Com. Law §15-207.

Md. Code Ann., Com. Law §15-204 provides:
> Every conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration.

Md. Code Ann., Com. Law §15-207 provides:
> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.

owes a duty and is not immune from liability based on applicable substantive tort law principles." *Applied Equipment,* 869 P.2d at 459.  And civil conspiracy liability does not arise if the alleged conspirator "although allegedly a participant in the agreement underlying the injury, was not *personally bound* by the duty violated by the wrongdoing."  *Atkinson*, 174 F. Supp. 2d at 409 (emphasis added).  Imposing conspirator liability on a transferee or transferor is consistent with this principle because it imposes liability on the parties who already fit squarely within the statute.  On the other hand, imposing liability on conspirators who are not transferors or transferees lacks the legal nexus between the alleged conspirator and the plaintiff required by *Atkinson* and *Applied Equipment,* and creates a claim not recognized by the statute.

None of the Defendants is alleged to owe any duties to the Plaintiff, the estate or its creditors.  None of the Defendants held title to any of the property at issue or is alleged to have received any property of the estate or transferred any property of the estate.  The Court concludes, therefore, that the Defendants are not legally capable of committing the unlawful act of fraudulent transfer in this case and will dismiss the Second Amended Complaint.

*Conclusion*

For the foregoing reasons, the Court will grant the Motion.  A separate order will issue.

cc:	Gary A. Rosen
	Gemini Title & Escrow, LLC
	Law Offices of Craig A. Parker, LLC
	Craig A. Parker
	Charles S. Hirsch
	Robert A. Scott
	Neal Goldfarb
	Roger Schlossberg
	Office of the U.S. Trustee

**END OF MEMORANDUM**