IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MINH VU HOANG AND          :
THANH HOANG
_____   :

GARY A. ROSEN, Trustee
     Appellant                    :

     v.                           :   Civil Action No. DKC 12-0593

GEMINI TITLE & ESCROW, LLC,       :
et al.
     Appellees                    :

**MEMORANDUM OPINION**

Gary A. Rosen, the chapter 7 trustee for the bankruptcy estate of Minh Vu Hoang, appeals from a final judgment in an adversary proceeding entered by United States Bankruptcy Judge Thomas J. Catliota on January 23, 2012. Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is deemed unnecessary. *See* Fed.R.Bankr.P. 8012; Local Rule 105.6. For the reasons that follow, the judgment of the bankruptcy court will be reversed and the case remanded for further proceedings.

**I.   Background**

On May 10, 2005, Debtor Minh Vu Hoang filed a voluntary petition under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland. She served as debtor-in-possession from the date of filing until Appellant Gary A. Rosen was appointed chapter 11 trustee on

August 31, 2005.  The case was converted to chapter 7 on October 28, 2005, and Appellant was named chapter 7 trustee.

At some point thereafter, Appellant learned that Debtor had been engaged, both pre and post-petition, in a real estate "flipping" scheme.  Typically, she would purchase a distressed property at a foreclosure sale; title that property in the name of a sham business entity under her control; and rehabilitate and sell the property for substantial profit, often transferring the proceeds to a different entity through which she would then purchase another property.  This process, or something similar to it, was repeated many times; Debtor used literally hundreds of sham business entities to "flip" hundreds of properties. Unfortunately, she failed to report this income to the IRS and her interest in the business entities and associated properties was not reflected in her bankruptcy schedules or statement of financial affairs.  On April 11, 2007, she was criminally indicted on charges related to tax and bankruptcy fraud.[1]

In an attempt to recover estate assets fraudulently concealed by Debtor, Appellant commenced numerous adversary proceedings within the main bankruptcy case, including the case from which the instant appeal arises.  On December 18, 2009, he

---

[1] On October 13, 2010, Debtor was convicted, upon her guilty plea, of conspiracy to defraud an agency of the United States, in violation of 18 U.S.C. § 371.  She was sentenced to a term of imprisonment of sixty months, which she is presently serving.

2

filed suit against Appellees Gemini Title & Escrow, LLC ("Gemini"), the Law Offices of Craig A. Parker, LLC ("Law Offices"), and Craig A. Parker ("Parker"), related to their role in ten post-petition transactions while Mrs. Hoang was serving as debtor-in-possession. The complaint recites:

> Minh Vu Hoang's asset-concealment scheme continued even after she went into bankruptcy. Over a period of roughly three months, and without knowledge or approval of the Court, she sold 10 properties that were titled in the name of her sham entities. Gemini Title handled the closings on these sales, and it did so with knowledge that Minh Vu Hoang had filed for bankruptcy. Gemini Title received the proceeds of those sales, which constituted property of the bankruptcy estate. And instead of turning them over to the estate, Parker (and his LLC) distributed them to various third parties on Minh Vu Hoang's instructions. Those funds are now lost to the estate.

(ECF No. 1-24 ¶ 4).[2] The original complaint raised twelve counts, including, as relevant here, two counts seeking turnover of estate property pursuant to 11 U.S.C. § 542(a).[3]

---

[2] Parker's liability is premised upon his role as a principal of both Gemini and Law Offices. The liability of Law Offices is based on its opening and maintaining an Interest Only Lawyer's Trust Account ("IOLTA") for the benefit of Debtor. Two of the properties at issue were allegedly purchased by Debtor, post-petition, with funds from this account. Other allegations suggest that the proceeds from the property sales were deposited into this account.

[3] For ease of exposition, all further reference to provisions of the bankruptcy code will be to section number only. These sections are all found in Title 11 of the United States Code.

In response, Appellees moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Bankr.P. 7012(b), arguing, *inter alia*, that the turnover counts were time-barred:

> In Counts 1 and 2, Trustee seeks to recover the total amount disbursed by Defendants as a result of the transactions at issue pursuant to 11 U.S.C. § 542(a). All of these transactions occurred after Debtors[4] had filed their Bankruptcy petitions. Accordingly, the proper method for the Trustee to attempt to recover post-petition transfers is pursuant to § 549. Trustee undoubtedly did not include a claim under § 549 because it contains a two year statute of limitations. 11 U.S.C. § 549(d). By contrast, § 542 contains no express limitations period. Trustee, however, cannot circumvent the two year limitations period contained in § 549(d) by filing a claim under § 542(a) to recover for a post-petition transfer.

(ECF No. 1-26, at 11-12).

In opposing that motion, Appellant argued that the limitations provision of § 549(d) does not govern turnover claims under § 542(a); rather, "[b]ecause turnover and accounting are equitable remedies, the timeliness of claims under § 542 is governed by the doctrine of laches." (ECF No. 1-34, at 32). According to Appellant, a laches defense could not be successful because Appellees could not show that the trustee

---

[4] The plural "Debtors" refers to Mrs. Hoang and her husband, Thanh Hoang, who filed a chapter 11 petition shortly after his wife. That case was also converted to chapter 7 and Mr. Rosen was named as trustee. The bankruptcy court subsequently ordered that the two cases be jointly administered.

failed to act diligently in filing the complaint after discovery of the claims or that any prejudice resulted from the delay in filing.  He pointed to allegations in the complaint that he "did not discover the facts giving rise to the claims being asserted here until less than three years before the commencement of this adversary proceeding" due to "the complicated and tangled nature of [Debtor's] assets and financial affairs," and argued that "[t]hese allegations must be accepted as true for the purposes of the defendants' motion."  (ECF No. 1-34, at 34 (quoting ECF No. 1-24 ¶¶ 158-59)).

At a motions hearing held June 9, 2010, the bankruptcy court agreed with Appellees that the turnover claims were time-barred:

> I am going to grant the motion to dismiss on statute of limitations [grounds] without prejudice to the Plaintiff's right to amend [the] complaint, to assert further facts upon which a determination could be made that the discovery rule applies here to allow the complaint to survive.

(ECF No. 1-41, at 7).  On March 31, 2011, the court issued a memorandum of decision and order dismissing all counts of the original complaint, albeit with leave to amend certain claims, including those seeking turnover.  (ECF No. 1-43).

On May 2, 2011, Appellant filed his first amended complaint, raising two counts for turnover and one count alleging co-conspirator liability for conversion.  Rather than

asserting additional facts in support of equitable tolling, however, the amended complaint omitted the only paragraphs contained in the original pleading related to the trustee's discovery of the turnover claims. Instead, Appellant attempted to bolster his defense to any laches argument, asserting that "none of the defendants will suffer any unfair prejudice as a result of any delay by Rosen in commencing suit against the defendants"; that "all relevant documentary evidence and relevant electronically stored evidence has been preserved and is reasonably available to the defendants in connection with their defense against the claims here"; and that "all witnesses having personal knowledge that would be relevant in this proceeding and favorable to the [] defense . . . are reasonably available to be deposed and to testify." (ECF No. 1-2 ¶¶ 166-68).

Appellees again moved to dismiss. Observing that the amended complaint did not address the deficiencies of the original, they renewed their argument that the turnover claims were time-barred under § 549(d)'s statute of limitations, adding that, even if the doctrine of laches applied, "the degree of prejudice caused by the Trustee's delay in bringing the § 542(a) claims is irrelevant" because "Maryland's general three-year statute of limitations would govern whether there has been an unreasonable delay sufficient to invoke the doctrine" and "[i]t

is undisputed that the Trustee waited more than three years . . . to file his Original Complaint." (ECF No. 1-4, at 12). In any event, Appellees argued, the turnover claims could not be sustained on the merits because Mrs. Hoang, the debtor-in-possession, "had custody and control of the proceeds at all times." (*Id.* at 15). They insisted that because they complied with all directives of the estate administrator, they "did nothing wrong" and could not be liable for turnover. (*Id.*).

In response, Appellant conceded that he was "at least [on] inquiry notice" of the grounds for his turnover claims "more than three years before [it] was filed," but argued that this fact alone was not dispositive. (ECF No. 1-8, at 3). According to Appellant, federal law, not Maryland state law, governed a laches defense in this context, and "federal law does not incorporate the principle that laches is automatically established by the expiration of the analogous statute of limitations." (*Id.* at 8). He maintained that the amended complaint sufficiently alleged that Appellees were not prejudiced as a result of his delay in bringing the action and that the issue could not be resolved in the context of a motion to dismiss.

Prior to a hearing on the motion to dismiss the amended complaint, the bankruptcy court issued a decision in another adversary proceeding brought by the trustee on behalf of the

7

Hoangs' bankruptcy estates. *See In re Minh Vu Hoang*, 452 B.R. 902, 906-08 (Bankr.D.Md. 2011) ("*Dahan I*"). In *Dahan I*, Judge Catliota confronted a similar issue regarding the viability of turnover claims against David Dahan and associates, who allegedly assisted Mrs. Hoang in continuing her scheme, post-petition and after appointment of the trustee. The defendants argued that § 542 was limited in application to property that was in their possession at the time the bankruptcy petition was filed and that post-petition transfers could only be avoided pursuant to § 549, which was subject to a two-year statute of limitations. Because the limitations period prescribed by § 549(d) had expired, the defendants maintained that the trustee's recovery of the money at issue was foreclosed. In support of their argument, the defendants relied principally on *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, PLLC*, 275 B.R. 737, 741 (D.Md. 2001), a case in which Judge Nickerson found, in relevant part, that § 542 was "an inappropriate means" to recover property transferred post-petition and that such property could only be recovered through an avoidance action under § 549.

In *Dahan I*, Judge Catliota elected to follow this precedent, albeit with reservations:

> This Court will follow *Deckelbaum* and dismiss Plaintiff's § 542 claims. However, if the Court were writing on a clean slate, it might well reach a different result. The *Deckelbaum* court focused on the structure of

8

the Bankruptcy Code, and in particular, the interplay between § 542 and § 549. But the plain language of § 542 does not limit its application to recovery of property that is in a defendant's possession only as of the petition date. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (courts should interpret a statute in accordance with its plain meaning). To the contrary, § 542 recovery can be sought from "an entity . . . in possession, custody, or control during the case of property. . . ." 11 U.S.C. § 542 (emphasis added). The specific application of the section to property that is in the possession, custody or control of a defendant "during the case" would seem contrary to a determination that it only applies to pre-petition transfers.

. . . .

The courts that conclude that § 542 is limited to cases where the defendant is in possession of recoverable property as of the petition date do so based on § 549. . . . They reason that § 549 specifically addresses post-petition transfers and contains important limitations that would not apply to a post-petition § 542 action. . . .

On their face at least, § 542(a) and § 549 address different circumstances. Section 542(a) addresses cases where the defendant is or has been in possession of property of the estate, while § 549 addresses unauthorized post-petition transfers of property. Nevertheless, generally speaking, because one can be in possession of property only where one has received a transfer of property, there is substantial overlap between the two provisions. But merely because there may be overlap in the application of the two statutory provisions does not necessarily mean that one, § 549, limits the other, § 542. . . .

9

> In sum, in the view of the Court, the question is not free from doubt. Nevertheless, as stated above, the Court will follow *Deckelbaum* and dismiss the § 542 claims.

*Dahan I*, 452 B.R. at 906-08 (footnotes omitted).

In the instant case, the court held a hearing on July 11, 2011, on Appellees' motion to dismiss the amended complaint. As counsel for Appellees presented his opening argument, the following colloquy ensued:

> [APPELLEES]: These are post-petition transfers, transfers that were made after the filing of the bankruptcy [case], and the case law that we [cited] in our brief says if you are going to bring a [§] 542 claim, you have to comply with the [§] 549 statute of limitations. . . .

> THE COURT: I take it you are not familiar with the memorandum decision I issued in an adversary proceeding before me brought by this same Plaintiff, the Chapter 7 Trustee for [Minh] Vu Hoang and Thanh Hoang, in adversary 11-87 about 10 days ago?

> I adopted the rule that -- I adopted the position [set forth in *Deckelbaum* that] . . . Section 542 cannot be used by the Trustee to recover post-petition transfers. That is the exclusive province of Section 549.

> [APPELLEES]: Your Honor, I was not aware of that decision. . . . Obviously, that lends even further support to our position in this case that these claims should have been brought under [§] 549 and they are subject to a 2 year statute of limitations. Obviously, that statute of

10

> limitations expired long before this case
> was brought. . . .
>
>      THE COURT:     I guess I could probably
> cut this up and tell you that I am going to
> adopt that position. . . . I have the sense,
> from a status conference, that the Plaintiff
> in the Dahan case that I mentioned is going
> to appeal that.  So, maybe we will get an
> ultimate resolution but I am going to adopt
> that here.  So, I will be dismissing the 2
> [§] 542 counts.

(ECF No. 1-44, at 6-7).  In addressing the court's ruling,

Appellant admitted that he saw no "way around saying [that the

instant case] is within the scope of the ruling [in *Dahan I*]"

and confirmed that the court was "not inclined to reconsider the

ruling." (*Id*. at 12).  Nevertheless, in light of the fact that

he was planning to move for leave to appeal *Dahan I*, Appellant

urged the court to decide "the issues that have been raised

relating to la[]ches and the statute of limitations . . . that

would tee those issues up for appeal also." (*Id*.).  The court

declined to do so.

By a memorandum of decision and order issued August 31,

2011, the bankruptcy court dismissed the amended complaint, but

allowed Appellant fourteen days in which to file a second

amended complaint "to assert a claim for conspiracy to hinder,

delay or defraud the estate[.]" (ECF No. 1-11, at 2).  On

September 14, Appellant filed his second amended complaint, as

well as a motion for leave to appeal the dismissal of his

turnover claims.   The motion for leave to appeal was docketed in this court on October 3, 2011, as Civil Action No. DKC 11-2934. While that motion was still pending, Judge Catliota issued a final order dismissing Appellant's second amended complaint in the adversary proceeding.   Thus, the motion for leave to appeal was denied as moot.   (*See* Civ. No. DKC 11-2934, ECF No. 4).

On February 2, 2012, Appellant noted the instant appeal "from the final judgment in this action entered on January 23, 2012 (together with all interlocutory orders that are merged in that final judgment, including but not limited to the order entered March 11, 2011[,] dismissing the original complaint with leave to amend and the order entered on August 31, 2011[,] dismissing the First Amended Complaint with leave to amend)." (ECF No. 1).   The notice of appeal was docketed in this court on February 24.

On the same day that Appellant's initial brief was due, this court rendered its decision in the Dahan appeal.   *See In re Minh Vu Hoang*, 469 B.R. 606 (D.Md. 2012) ("*Dahan II*").   While *Dahan II* ultimately affirmed the bankruptcy court's ruling, it did so on different grounds, concluding that "the property at issue [could not] be recovered pursuant to § 542(a)" based on three underlying premises: "(1) § 542(a) entitles the trustee to possession of property of the estate; (2) property that is transferred is not property of the estate; and (3) the property

12

at issue in this case was transferred." *Dahan II*, 469 B.R. at 615. Observing that the transactions at issue in *Deckelbaum* were also post-petition transfers, the court found that its ruling was consistent with Judge Nickerson's decision in that case. It stopped short, however, of endorsing the broader concept embraced by some courts that an action for turnover under § 542(a) is confined to property of the estate in possession of the defendant at the time the bankruptcy petition is filed. *See, e.g., In re 31-33 Corp.*, 100 B.R. 744, 747 (Bankr.E.D.Pa. 1989). Rather, the court opined, "property of the estate may be received by a defendant (most often the debtor), post-petition, without a transfer having occurred," in which case "the property, or its value, is subject to a turnover order to the extent that the debtor had an interest at the time the bankruptcy case commenced." *Dahan II*, 469 B.R. at 620 (citing *In re Shearin*, 224 F.3d 353, 356-57 (4th Cir. 2000)).

Appellant moved for an extension of time in which to file his brief, explaining that the *Dahan II* decision had "substantially change[d] the complexion of this appeal, and it would make no sense for [him] to go ahead with the filing of his existing brief." (ECF No. 3, at 1). That motion was granted, and Appellant filed his opening brief on April 9, 2012, framing the question presented as follows:

13

> This Court held in [*Dahan II*] that §
> 542(a) applies in cases where the defendant
> received property of the estate [post-
> petition], but only if he received it other
> than by means of a "transfer" as defined in
> the Bankruptcy Code.   The complaint here
> alleges that the defendants received
> property of Minh Vu Hoang's estate [post-
> petition], and the Chapter 7 trustee in her
> bankruptcy [case] has sued the defendants
> under § 542(a) to recover the value of the
> property they received.
>
> The question therefore presented under
> *Dahan* [*II*] is whether the defendants
> received the property at issue as the result
> of a transfer.

(ECF No. 5, at 3).   Appellees filed their brief on April 27 (ECF
No. 6) and Appellant filed a reply on May 14 (ECF No. 7).

## II.  Standard of Review

This court reviews the bankruptcy court's dismissal for
failure to state a claim under a *de novo* standard of review.
*See In re Rood*, 426 B.R. 538, 550 (D.Md. 2010) (citing *Mylan
Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

The purpose of a motion to dismiss under Fed.R.Civ.P.
12(b)(6), which is applied to bankruptcy adversary proceedings
pursuant to Fed.R.Bankr.P. 7012(b), is to test the sufficiency
of the complaint.   *Presley v. City of Charlottesville*, 464 F.3d
480, 483 (4th Cir. 2006).   The complaint need only satisfy the
standard of Rule 8(a), which requires a "short and plain
statement of the claim showing that the pleader is entitled to
relief."   Fed.R.Civ.P. 8(a)(2).   "Rule 8(a)(2) still requires a

'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs.*, 7 F.3d at 1134). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In moving to dismiss, Appellees argued, *inter alia*, that Appellant's turnover claims are time-barred. The statute of limitations and the doctrine of laches are affirmative defenses that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c), incorporated into bankruptcy adversary proceedings by Fed.R.Bankr.P. 7008, and are not usually appropriate grounds for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). Nevertheless, dismissal may be proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).

## III. Analysis

Based on the reasoning of *Dahan II* – which, as noted, had not been decided at the time the first amended complaint was dismissed by the bankruptcy court – Appellant contends that he has stated a sufficient claim for turnover of estate property pursuant to § 542(a). He argues that, unlike the defendants in *Dahan* and *Deckelbaum*, Appellees possessed property of the estate – *i.e.*, the proceeds from the sale of ten properties owned by Debtor vis-à-vis various sham business entities – "as conduits,

16

not transferees," insofar as they "received and held estate funds on behalf of [Debtor]" and "had no right to use the funds for their own benefit." (ECF No. 5, at 19). Moreover, he asserts that although Debtor was the debtor-in-possession at the time of the transactions at issue, Appellees either knew or should have known that she was acting in dereliction of her fiduciary duty and that she was without actual authority to transfer the estate's interest in the properties.

Appellees counter that it is undisputed that "each of the transactions at issue involved sales to bona fide third parties"; thus, "post-petition transfer[s] of estate property occurred and [] the proceeds of those transfers was no longer property of the estate." (ECF No. 6, at 11). Consequently, according to Appellees, the trustee was required to avoid those transfers pursuant to § 549, but was precluded from doing so because the statute of limitations found in § 549(d) had expired. Appellees further contend that if the sales proceeds at issue are determined to be property of the estate, their obligation under § 542 was to turn them over to Mrs. Hoang, the debtor-in-possession, and there is no dispute that they did so. In any event, they argue that dismissal of Appellant's turnover claims was proper because those claims are time-barred.

As explained in *Dahan II*, the filing of a bankruptcy petition gives rise to the creation of an estate, which is

17

comprised, *inter alia*, "of all the following property, wherever located and by whomever held":

> (1) Except as provided in subsection (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> . . . .
>
> (3) Any interest in property that the trustee recovers under section 329(b) [excess attorney's fees], 363(n) [damages from improper sale], 543 [property turned over by custodian], 550 [property from avoided transfer], 553 [property recovered from offset], or 723 [property recovered from general partners] of this title.
>
> . . . .
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
>
> (7) Any interest in property that the estate acquires after the commencement of the case.

§ 541(a). Thus, "property of the estate" consists of every conceivable interest of the debtor in property as of the time the bankruptcy case is commenced, regardless of who has possession of it. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983)).

Upon appointment in a chapter 7 case, the trustee essentially steps into the shoes of the debtor with respect to the debtor's interests in such property. The trustee is charged

18

with "marshal[ing] and consolidat[ing] the debtor's assets into a broadly defined estate from which, in an equitable and orderly process, the debtor's unsatisfied obligations to creditors are paid to the extent possible." *In re Andrews*, 80 F.3d 906, 909-10 (4th Cir. 1996).   In aid of that responsibility, the bankruptcy code provides a number of mechanisms by which the trustee may obtain possession and control of estate property. One such mechanism is § 542(a), which provides:

> an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Thus, § 542(a) entitles the trustee to possession of property of the estate.   *See In re Pyatt*, 486 F.3d 423, 427 (8th Cir. 2007) ("By referring to § 363, a section which authorizes the trustee to 'use, sell, or lease . . . property of the estate,' the drafters of § 542(a) made it clear that the turnover obligation applies to property of the estate").

As the United States Court of Appeals for the Eighth Circuit explained in *In re Knaus*, 889 F.2d 773, 775 (8th Cir. 1989):

> The principle is simply this: that a person holding property of a debtor who files

> bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings). Otherwise, if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced. The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return. And those who unjustly retain possession of such property might do so with impunity.

Insofar as § 542(a) calls for turnover of property of the estate "or the value of such property," the Fourth Circuit has interpreted the statute as requiring any entity that possessed estate property at any time after the commencement of the bankruptcy case to account for the value of the property if it is no longer in its possession. *See In re Shearin*, 224 F.3d 353, 356-57 (4th Cir. 2000) (citing *In re USA Diversified Prods., Inc.*, 100 F.3d 53, 56-57 (7th Cir. 1996)).[5] Thus, the trustee seeking turnover need not establish that the entity from which turnover is sought still possesses the property at issue. The question, rather, is whether it did so at any time after the debtor filed the bankruptcy petition.

---

[5] As noted in *Dahan II*, other courts have adopted a different interpretation. *See In re Pyatt*, 486 F.3d at 428-29.

The trustee's amended complaint emphatically alleges facts to show that the property at issue in this case – *i.e.*, the proceeds of the post-petition sale of ten properties – was property of the estate.   According to the trustee's amended complaint, Debtor either held an interest in the properties on May 10, 2005 – the date she filed her bankruptcy petition – or, in two cases, purchased properties with estate assets. (ECF No. 1-2 ¶ 87).   In either event, the money derived from the subsequent sales constituted "[p]roceeds, product, offspring, rents, or profits from property of the estate," and was itself "property of the estate."   § 541(a)(6).   As to the two properties purchased post-petition, "[a] portion of the funds . . . came from checks drawn" on the IOLTA account allegedly maintained by Parker and Law Offices for the benefit of Debtor. (*Id.* at ¶ 94).   Gemini "received the funds paid by or on behalf of the buyer" (*id.* at ¶ 103) in each of the ten transactions, as those funds were "deposited in[to] an account . . . in the name of Gemini . . . until they were disbursed." (*Id.* at ¶ 104).[6]

---

[6] There appears to be some inconsistency in the amended complaint as to the roles of Parker and Law Offices in holding and/or disbursing the proceeds of the sales.   In the introduction, Appellant alleges that "Gemini received the proceeds" of the sales, and, "instead of turning them over to the estate, Parker (and his LLC) distributed them to various third parties on Minh Vu Hoang's instructions." (ECF No. 1-2 ¶ 4).   In the substantive allegations, however, the complaint recites that the funds for the purchase of two of the properties were at least partially derived from the IOLTA account

Moreover, at the time of each of these transactions, Parker was aware that Debtor had filed a bankruptcy petition and his knowledge may be imputed to Gemini and Law Offices. (*Id*. at ¶¶ 166-77). Thus, Appellees are alleged to have had "possession, custody, or control, during the case, of property that the trustee [could] use, sell, or lease," and were obligated to "deliver to the trustee, and account for, such property or the value of such property[.]" § 542(a). Accordingly, the amended complaint sufficiently states a claim for turnover.

While it is true, as Appellees contend, that the proceeds at issue derived from transfers of property, the trustee was not required to avoid any post-petition transfer, pursuant to § 549, in order to draw the property back into the estate.[7] Indeed, the

---

maintained by Parker and Law Offices, but the proceeds from the sales of the ten properties were possessed exclusively by Gemini. (*Id*. at ¶¶ 94, 104). For present purposes, it suffices that each of the appellees is alleged to have possessed property of the estate during the bankruptcy case.

Notably, the complaint also alleges that Law Offices received an unauthorized post-petition payment of $13,000 as "a settlement cost" in connection with one of the sales, and that this payment "constituted property of Minh Vu Hoang's bankruptcy estate." (*Id*. at ¶¶ 114, 115). It is unclear whether this amount is part of the $157,238.88 total sought from Parker and Law Offices, but, if it is, this would likely constitute a transfer that could only become property of the estate after avoidance. If an avoidance action is precluded by the limitations provision of § 549(d), the property could not be recovered by a turnover action.

[7] Section 549(a) provides, in relevant part, that "the trustee may avoid a transfer of the estate . . . that occurs

22

property at issue did not leave the estate until after it was in
Appellees' possession.   When the properties were sold, the
estate's assets were simply converted from interests in real
property to interests in the proceeds from the sale of real
property.   Pursuant to § 541(a)(6), those proceeds constituted
"property of the estate," and it is that property that is
allegedly subject to turnover.   For present purposes, it is
irrelevant that the money in question is no longer in Appellees'
possession or that it was later transferred to third parties.
Under the rule of *In re Shearin*, 224 F.3d at 356, so long as
Appellees possessed property of the estate after commencement of
the bankruptcy case, that property is "subject to turnover, and
[Appellees], having possessed such [property,] must 'account
for' that property 'or the value of said property.'"   To the
extent that Appellees argue that they effectively turned over
the property to the debtor-in-possession, they cite no case law

---

after the commencement of the case . . . [and] is not authorized
under this title or by the court."   If a transfer is
successfully avoided, the property at issue is "drawn back into
the estate, thereby becoming 'property of the estate' under §
541(a)(3) *via* § 550(a)."   *Dahan II*, 469 B.R. at 619.

    Appellant urges the court to find that no transfer occurred
here because Appellees received the property as "conduits," not
"transferees."   Appellees, however, do not challenge this point.
It is undisputed that they simply possessed the money in
question and distributed it in accordance with Debtor's
instructions.   Unlike *Dahan II*, an avoidance action was not
necessary because the property in question never lost its status
as "property of the estate."

supporting their view that this absolves them of any potential
liability. The complaint clearly alleges that Appellees were
aware that Debtor had filed for bankruptcy and that she was
acting in dereliction of her fiduciary duty as debtor-in-
possession and without court approval. On the instant record,
the court cannot conclude as a matter of law that Appellant's
turnover claims will not lie.[8]

---

[8] Notably, *Deckelbaum* presented a similar circumstance in
that the property in question related to post-petition transfers
made at the behest of the debtor-in-possession, which the
trustee later sought to recover pursuant to § 542(a). Among the
defenses asserted was one pursuant to § 363(c)(1). Judge
Nickerson explained:

> Section 363(c)(1) of the Bankruptcy
> Code authorizes the debtor to "enter into
> transactions, including the sale or lease of
> property of the estate, in the ordinary
> course of business" without notice or
> hearing. 11 U.S.C. § 363(c)(1). Plaintiff
> contends that the legal fees paid by Dunhill
> to Defendant law firms were not in the
> debtor's ordinary course of business. The
> Court agrees. As explained above, the
> creation of Dunhill and other corporate
> entities, and Debtor's manipulation of those
> entities (including but not limited to the
> "Management Agreement") constituted a
> serious breach of Debtor's fiduciary duties
> to his creditors. *See Kremen v. Harford
> Mutual Insurance Co.*, 958 F.2d 602, 605 (4th
> Cir. 1992). Even when viewed in the light
> most favorable to the Defendants, the fact
> that Debtor used the accounts of one of
> these sham entities to pay his lawyers is
> surely not what the Code drafters envisioned
> to be "in the ordinary course of business."

*Deckelbaum*, 275 B.R. at 742.

Finally, Appellees argue that the turnover claims are time-barred due to expiration of the two-year statute of limitations for post-petition avoidance set forth in § 549(d).  While the limitations period in that provision effectively bars a turnover claim where a post-petition transfer has occurred – *i.e.*, because the transfer cannot be avoided, thus the property cannot be drawn back into the estate such that the trustee would have a right of possession – the property at issue here, as noted, was property of the estate.  It is likely true that turnover claims, which are equitable in nature, are subject to the doctrine of laches.  *See In re Mushroom Transp. Co.*, 382 F.3d 325, 336-37 (3rd Cir. 2004) (finding turnover claim subject to laches, requiring a showing of inexcusable delay in bringing the action and prejudice resulting therefrom).  To the extent that Appellees have raised such a defense, its merit does not appear on the face of the complaint.  As the United States District

---

Appellees briefly address § 363(c) in a footnote in their brief, asserting that, "based on Trustee's allegation that [Debtor] was in the business of buying distressed real estate and selling it at a profit . . . , it appears that the transactions were made in the ordinary course of business." (ECF No. 6, at 14 n. 7).  This assertion glosses over numerous allegations suggesting that Appellees either knew or should have known that Debtor was engaged in illegal or improper conduct.  Viewing the complaint in the light most favorable to Appellant, as the court must in considering a motion to dismiss, there is a sufficient basis for finding that these transactions were not made in the ordinary course of a legitimate business.

Court for the Middle District of North Carolina observed in *Fulmore v. City of Greensboro*, 834 F.Supp.2d 396, 421 (M.D.N.C. 2011):

> Laches is an affirmative defense . . . and "a motion to dismiss filed under [Rule 12(b)(6)], which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *cf. Fed. Express Corp. v. U.S. Postal Serv.*, 75 F.Supp.2d 807, 814 (W.D.Tenn. 1999) ("As evaluation of a claim of laches is dependent upon the submission of evidence, [Rule 12(b)(6)] is not the proper vehicle for bringing such a request."). An affirmative defense may only be reached at the Rule 12(b)(6) stage "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (alteration in original) (emphasis omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

While expiration of the § 549(d) limitations period may prove to be relevant to a laches analysis, it is not dispositive. *See In re Mushroom Transp. Co.*, 382 F.3d at 336-37. Rather, it merely creates a presumption of inexcusable delay that Appellant must eventually rebut, but the defense "is not ordinarily considered on a motion to dismiss because the plaintiff is not required to negate it in its complaint." *Bethesda Softworks, LLC v. Interplay Entertainment Corp.*, Civ. No. DKC 09-2357, 2010 WL 3781660, at *9 (D.Md. Sept. 23, 2010). Thus, while the turnover claims may eventually be found to be time-barred, that

determination cannot be made in the context of a motion to dismiss.

## IV.  Conclusion

For the foregoing reasons, the order of the bankruptcy court dismissing the turnover claims raised in Appellant's first amended complaint will be reversed.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge